Turner, J.
 

 The record presents the question whether the action of the trial court and the approval of such action by the Court of Appeals in denying plaintiff the right to recover punitive damages under the facts of this case constitutes error.
 

 To be determined first is whether the action sounds in tort or contract. If
 
 ex contractu,
 
 it is to be dis
 
 *421
 
 posed of on the authority of
 
 Ketcham
 
 v.
 
 Miller,
 
 104 Ohio St., 372,136 N. E., 145, wherein it was held:
 

 “Punitive damages are not recoverable in an action for breach of contract.”
 

 On the other hand, if this be an action
 
 ex clelicto,
 
 it is to be governed by the case of
 
 Roberts
 
 v.
 
 Mason,
 
 10 Ohio St., 277, wherein it was held:
 

 “In an action to recover damages for a tort which involves the ingredients of fraud, malice, or insult, a jury may go beyond the rule of mere compensation to the party aggrieved, and award exemplary or punitive damages.”
 

 In the
 
 Ketcham case,
 
 which was an action for damages growing out of a wrongful ejectment, Judge Robinson said, at page 377:
 

 “While the facts in this case might well have justified a pleading charging a tort, we are unable from the amended petition itself to reach any other conclusion than that the gravamen of the complaint is the breach of the contract* * ’ ’
 

 On behalf of appellee it is claimed “The Uniform Sales Code (Sections 8381-8456 G. C. 0.) does not authorize the buyer of chattel property to recover from the seller punitive damages for alleged false and fraudulent representations as to the quality of the property,” to which the appellant has responded by citing Section 8453, General Code, which provides:
 

 “In any case not provided for in this chapter, the rules of law and equity, including the law merchant, and in particular the rules relating to the law of principal and agent and to the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy,' or other invalidating cause, shall continue to apply to contracts to sell and to sales of goods.”
 

 Section 8449, General Code, on which appellee'relies, provides:
 

 
 *422
 
 “ (1) When there is a breach of warranty by the seller, the buyer may, at his election—
 

 “ (a) Accept or keep the goods and set up against the seller, the breach of warranty by way of recoupment in diminution or extinction of the price;
 

 ‘1 (b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty;
 

 “(c) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty;
 

 “ (d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid.
 

 “ (2) When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy therefor can be granted.
 

 “(3) When the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or-to offer to return the goods to the seller in substantially as good condition as they were-in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale.
 

 “(4) When the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as .has been paid, concurrently with the return
 
 *423
 
 of the goods, or immediately after an offer to return -the goods in exchange for repayment of the price.
 

 “(5) When the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods, as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price 'which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by Section 8433.
 

 “(6) The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events from the breach of warranty.
 

 “(7) In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty.”
 

 The only inhibition in this section is contained in the language: “When the buyer has claimed arid been granted a remedy in any one of these ways, no other remedy therefor can be granted.” The buyer has not claimed a remedy under Sectipn 8449, General Code, but she has claimed a remedy under Section 8453, General Code, which is
 
 in pari materia
 
 with Section 8449, General Code.
 

 The trial court held the action to be one in tort and proceeded to charge the jury in respect of misrepresentation and fraud, but also charged the jury that it might not consider punitive damages.
 

 We are of the opinion that the trial court was right in holding the action to be
 
 ex delicto,
 
 but wrong in holding that under the evidence in the case punitive damages might not be recovered.
 

 In the case of
 
 Atlantic & Great Western Ry. Co.
 
 v.
 
 *424
 

 Dunn,
 
 19 Ohio St., 162, 2 Am. Rep., 382, Brinkerhoff, C. J., said at page 167:
 

 “That such damages [punitive] may, in a proper case, be recovered against an individual party acting for himself, is settled in this state by the case of
 
 Roberts
 
 v.
 
 Mason,
 
 10 Ohio St. R., 277 * * *.”
 

 At page 170,
 
 supra,
 
 the chief justice said in respect of the theory of punitive damages: “It rests not on the ground of abstract or theoretical justice, but on the ground of public policy — a policy which seeks to promote the public safety; to punish, through the medium of a civil proceeding, a fraudulent, malicious, insulting, or wilful wrongdoer, and to hold him up as a warning example to others, to deter them from offending-in like manner.”'
 

 It is said in 13 Ohio Jurisprudence, 235, Section 137:
 

 “With respect to the recovery of exemplary damages in private actions, the different states have not adopted a uniform rule.
 

 “That punitive or exemplary damages may be given in a proper case is not an open question in Ohio. It is an established principle of law in Ohio that in actions to recover damages for tort, which involve the ingredients of fraud, malice, or insult, the jury may go beyond the rule of mere compensation of the party aggrieved, and award exemplary or punitive damages. The rule was distinctly recognized in early Ohio cases. As far back as 1859, Brinkerhoff, Ch. J., stated that the rule was considered established and elementary in Ohio jurisprudence. The rule is deemed so firmly settled as- to require alteration to come from the legislature rather than from the judiciary. And it is said by Brinkerhoff, Ch. J., that the courts are not prepared to recommend any such alteration. Their position is that, in cases of this kind, twelve intelligent and impartial men, acting- under oath, and subject, in a proper case, to the control of the court, are not likely
 
 *425
 
 to do any great wrong, and that the power which this rule confers upon a jury may, in practice, operate as a salutary restraint upon the evil passions of bad men. Punitive damages also are recoverable in many cases of actions
 
 ex clelicto
 
 where the defendant’s conduct shows a wanton or reckless disregard of the legal rights of others, even where the gist of the cause of action is negligence, although, as a general rule, exemplary damages are not recoverable in negligence actions, and with very few exceptions exemplary damages are not allowed in contract actions.”
 

 In Section 138,
 
 ibid.,
 
 it is said:
 

 “In some jurisdictions the theory is that exemplary damages are awarded by way of compensation, though they incidentally operate by way of punishment; but in Ohio, in accord with the weight of authority, punitive damages are allowed as a punishment to the offender, and as an example, to deter others from offending in a like manner. As stated in an early case, exemplary damages not only look to compensating the plaintiff for actual loss, but to punish the defendant, and as an example to deter others from committing the like offense. Such damages are given as smart money in the way of pecuniary punishment. The allowance of such damages rests not upon the ground of abstract or theoretical justice, but upon the ground of public policy, a policy which seeks to promote the public safety, to punish through the medium of a civil proceeding a fraudulent, malicious, insulting, or wilful wrongdoer, and to hold him up as a warning example to others, to deter them from offending in a like manner.”
 

 In 25 Corpus Juris Secundum, 708, Section 117, it is said:
 

 “Origin of doctrine.
 
 According to some authorities the practice of allowing exemplary damages had its origin in cases involving elements of recovery incap
 
 *426
 
 able of pecuniary estimate, and hence, of necessity, peculiarly within the discretion of the jury. Another theory advanced has been that the doctrine had its origin and foundation in a failure to recognize as items of recovery for which compensation could be given elements which should have been' so regarded. Whichever theory may be correct the right of a jury in certain cases to award exemplary damages has been said to be as old as the right of trial by jury itself, and, while objections have been advanced, the doctrine is now one of general acceptation.”
 

 In Section 120,
 
 ibicl.
 
 (page 716), it is said:
 

 “As a general rule exemplary damages are not recoverable in actions for the breach of contracts, irrespective of the motive on the part of defendant which prompted the breach. No more can be recovered as damages than will fully compensate the party injured. * * *
 

 “Where the acts constituting a breach of contract also amount to a cause of action in tort, there may be a recovery of exemplary damages upon proper allegations and proof. As sometimes stated, exemplary damages are recoverable for a tort committed in connection with, but independently of, the breach of contract, where the essentials of an award of such damages are otherwise present, the allowance of such damages being for the tort and not for the breach of contract. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse, or gross negligence which amounts to an independent tort.”
 

 In Section 125,
 
 ibid,
 
 (page 734), it is said:
 

 “It may be stated as a general rule that the principal or master may be held liable for exemplary damages where the act complained of was authorized or subsequently adopted by him, or where he participated in and ratified the wrongful'act of the agent or servant.”
 

 
 *427
 
 In 46 American Jurisprudence, 910, Section 781, it is said:
 

 “In accordance with the right to bring an action of deceit generally, a buyer who has- been induced by the fraud of the seller to purchase personal property may ordinarily maintain an action of, or in the nature of, deceit to recover damages resulting from the fraud. ’ ’
 

 In 24 American Jurisprudence, 21, Section 200, it is said:
 

 “A person who has been injured by the fraud of another or others, by either a party or parties to a transaction or a third party or third parties committing fraudulent acts involving or bringing about the negotiation of a transaction, such transaction usually but not necessarily involving business or commercial dealings, may maintain an action at law in tort to recover damages for the injury received from the fraud and deceit perpetrated by such other or others. The foundation of the action is not contract but tort. Such action was at common law, and is in the states where common-law pleading still is employed, in the nature of an action on the case, and under common-law pleading or under the code form of action is denominated as the ‘action of deceit.’ The tort action for the redress of fraud is of ancient origin, and is fully established by the authorities both in England and America. ’ ’
 

 In 37 Corpus Juris Secundum, 352, Section 63, it is said:
 

 “An action of deceit to recover damages for fraud inducing the making of a contract is not based on the contract but on the tort, and the consummation of the contract does not shield the wrongdoer or preclude recovery of damages for the fraud.”
 

 In 13 Ohio Jurisprudence, 238, Section 139, it is said:
 

 “By no means does every legal wrong entitle the' injured party to recover exemplary damages; by far
 
 *428
 
 the larger portion of actionable wrongs form no basis whatever for the recovery of such damages. The Ohio rale allowing a recovery of punitive or exemplary damages is, as the statement of the rule implies, predicated upon the circumstance that the wrong complained of involves ingredients of fraud, malice, or insult, or a wanton and reckless disregard of the plaintiff’s rights. Exemplary damages are a punishment, and should only attach to a wrongful intention, and it is frequently stated broadly that malice or insult is a necessary element in order to warrant a recovery thereof. That such damages are allowable only in cases of that kind is settled beyond dispute. As pointed out in an early case, the principle of permitting damages beyond naked compensation is for example, and the punishment of the guilty party for the wicked, corrupt, and malignant motive and design which prompted him to the wrongful act.”
 

 In the course of the
 
 per curiam
 
 opinion in the case of
 
 Tracy
 
 v.
 
 Athens & Pomeroy Coal & Land Co.,
 
 115 Ohio Ut., 298, 302, 303, 152 N. E., 641, it was said:
 

 “A principal, therefore, though, of course, liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages merely by reason of wanton, oppressive, or malicious intent on the part of the agent. In other words, where that which is tantamount to punitive or exemplary damages is ,to be recovered by reason of the willful character of the wrongful act, proof of this knowledge and willfulness on the part of the party producing the wrong must be made. The employer cannot be punished for the personal guilt of his servant or agent, unless the employer authorized, ratified, or participated in the wrongdoing. ’ ’
 

 The answer admits and the testimony shows that the defendant advertised in the daily newspapers and
 
 *429
 
 on the radio that he handled only quality merchandise. The record shows the following questions to and answers by the defendant on cross-examination:
 

 “Q. Do you recall her being in your store purchasing a watch? A. No, I recall her having been in the store to complain about the watch after having purchased it.
 

 “Q. You were present, were you not, on several occasions when she was there? A. On at least one.”
 

 The plaintiff testified:
 

 “Q. Was Mr. Greenwald present in the store? A. Yes, he was, and he was there when the watch was taken back. He stood and listened and never said a word.
 

 “Q. Was Mr. Greenwald in hearing of your conversation? A. Oh, yes, he came over and listened but he never said anything.”
 

 The witness, Lolita Wendling, testified:
 

 “Q. Was Mr. Greenwald present on that occasion? A. He was present in the background.
 

 “Q. Was he in hearing distance of your conversation? A. He was.
 

 “Q. Will you tell the ladies and gentlemen of the jury just what conversation occurred at that time between you, Mrs. Saberton and the man in the Greenwald’s store? A. Well, when we went in we explained to him that we knew the watch was not worth anything and that we had it to a watchmaker and would they give us the money back. Of course he said no, so we said, ‘Will you give us another watch?’ So he said no again, and we said Gvecan’t use this. After all we paid for it it is no good. We brought it back and it is not worth anything. What do you intend to do .about it?’ He said ‘nothing, you can leave it here again.’ There was no point in doing that.”
 

 While there is no evidence that the defendant was in the 'store at the time of the purchase there is evidence, as well as an admission in the answer, that he claimed
 
 *430
 
 to handle only quality merchandise. There is evidence in the record that the watch which was sold the plaintiff was not quality merchandise. There is evidence in the record from which it may be inferred that, the defendant ratified the actions of his store manager in respect of this sale.
 

 In 15 American Jurisprudence, 731, Section 289, it is said:
 

 “In jurisdictions which limit the recovery of exemplary or punitive damages from an employer for acts committed by his employee to cases where he ■authorized or ratified the employee’s act, the necessary authorization or ratification may be evidenced either by an express order to do the act or an express approval of its commission, or it may be implied from the acts or conduct of the principal, and in this regard it has been said that slight acts of ratification will be sufficient to support a claim for exemplary damages against the employer. Ratification, however, is to be inferred only from acts which evince an intention to ratify, and not from acts which may be readily and satisfactorily explained without involving- intention to ratify. On general principles, to authorize ratification it must appear that the employer had knowledge of the facts and circumstances attending the transaction or, at least, an intention to take upon himself without inquiry the risk of any improper acts of his agent. The fact that an employer retains an employee, after knowledge of the latter’s wilful and malicious conduct, tends to prove ratification of the employee’s act sufficient to support a verdict against the employer for exemplary damages. Some courts apparently take the view that the subsequent retention or promotion of the servant guilty of the wrong is of itself sufficient evidence of ratification. Most courts, however, do not regard the fact that the servant was continued in the master’s employment, standing alone, as sufficient to establish
 

 
 *431
 
 ratification of the censurable features of his conduct. On the other hand, the fact that the master discharged the servant on learning of his act may show his disapproval of the servant’s conduct and relieve him from liability for exemplary damages.”
 

 The record shows that the store manager who sold the watch to plaintiff was retained thereafter in the employment of defendant.
 

 ■ Summarizing, we are of the opinion that:
 

 (a) Section 8453, General Code, permits, and Section 8449, General Code, does not forbid an action
 
 ex delicto
 
 against the seller of merchandise where the sale has been induced by fraud or misrepresentation.
 

 (b) The petition in the instant case states facts which show a cause of action sounding in tort.
 

 (c) Such petition seeks damages both actual and punitive.
 

 (d) A jury would have been justified in finding ingredients of fraud, malice and insult from the evidence introduced in this case.
 

 (e) There was evidence from which the jury would have been justified in finding that defendant below (appellee here) ratified the actionable conduct of his employee.
 

 (f) The refusal of the trial court to charge that punitive damages might be recovered under the pleadings and evidence in this case was prejudicial error.
 

 Therefore, the judgment of the Court of Appeals should be and hereby is reversed and the cause is remanded for further proceedings according to law.
 

 Judgment reversed. ■
 

 Weygandt, C. J., Zimmerman and Bell, JJ., concur.
 

 Williams, Matthias and Hart, JJ., dissent.