FISHER, APPELLANT, *v.* HERING, APPELLEE.

(No. 649—Decided January 22, 1948.)

*Mr. Jacob Wagenhals,* for appellant.
*Mr. J. H. Gongwer,* for appellee.

McCLINTOCK, J. This action was begun in the Court of Common Pleas of Richland County by Henry J. Fisher against Karl W. Hering. The petition alleges briefly that Peg Elliott was employed as a waitress at a restaurant known as the Elms at 294 South Diamond street, Mansfield, where food and liquor were served; that Henry J. Fisher entered the Elms, sat at the bar, remained there several hours and drank a number of whiskies; that the bar was across the west end of the room; that the south portion of the room was filled with tables and chairs; that during the time Henry Fisher was at the bar Peg Elliott was serving people at the tables and was not serving any of the customers sitting at the bar; and that during the evening Peg Elliott had occasion to go back to the bar and

Henry J. Fisher accused her of shortchanging some of his friends two nights before.

The claim in the petition is that she shortchanged one person of $6.80 out of $10 and another person $1.80; that, after he accused Peg Elliott of shortchanging his friends, Peg Elliott struck plaintiff; that he and the stool on which he was seated fell over backwards; that plaintiff suffered a broken leg; and that Peg Elliott was acting in the scope of her employment and for the business of her master in making the assault upon the plaintiff.

To this petition an answer was filed which in substance admits the allegations of the petition as to ownership of the restaurant, and so forth; that, at the time mentioned in the petition, Peg Elliott was employed by defendant as a waitress; and that plaintiff was seated at the bar in defendant's place of business. The answer denies each and every other allegation of the petition.

The plaintiff introduced the testimony of several witnesses, which was to the effect that Peg Elliott was employed as a waitress; that on the evening of February 15, 1946, Henry J. Fisher entered the Elms and sat at the bar; that she performed the duties of a waitress; that plaintiff was there for about two hours; that plaintiff accused Peg Elliott of shortchanging several of his friends; that she thereupon struck plaintiff in the face with her right hand, with such force and violence that he and the stool fell over backwards, resulting in the fracture of the tibia of his right leg within two or three inches of the ankle joint and the fracture of the fibula of his right leg near the knee; that the duties of Peg Elliott were taking orders for food and drink, obtaining the same from the kitchen and bar, serving them at tables, collecting payment therefor and making change, if necessary; and that

the defendant had employed her and gave her instructions at the time she was employed.

In the absence of the defendant, the bartender, Wolfe, was in charge. The evidence shows also that after this assault, and for some time thereafter, Peg Elliott continued in the employ of the defendant.

At the conclusion of this testimony the defendant moved for an instructed verdict in favor of the defendant, for the reason that there was no evidence sustaining the material allegations of the petition. The court sustained the motion and a verdict in favor of the defendant was returned.

The plaintiff thereupon filed a motion for new trial, which was overruled, and thereafter filed in this court his appeal on questions of law.

Two assignments of error are set forth in the brief of plaintiff. First, that the court erred in sustaining the motion of defendant for a directed verdict, for the reason that the evidence adduced by plaintiff clearly showed that Peg Elliott was acting within the scope of her employment when she struck plaintiff. Second, that, by reason of the fact that Peg Elliott continued in the employ of the defendant after he learned of this assault, he ratified the acts of Peg Elliott.

In considering the first assignment of error, we note the following:

"The old rule that the master was never liable for the willful or malicious act of his servant is not now the law. He is answerable, if the act was done in his master's business, and this is the true test of his liability: *Richberger* v. *American Exp. Co.*, 73 Miss., 161, 55 Am. St. Rep., 522; *Bryan* v. *Adler*, 97 Wis., 124, 65 Am. St. Rep., 99; monographic note to *Goodloe* v. *Memphis Rd. Co.*, 54 Am. St. Rep., 85." 71 Am. St. Rep., 736.

" * * * a verdict for the defendant should, on proper motion, be directed, if there is no evidence, or no reasonable inference to be drawn from facts established

by the evidence, that the person who caused the injury to the plaintiff was an employee of the defendant, and acting within the scope of his employment, or in the service of the master, when the injury occurred." 26 Ohio Jurisprudence, 687, Section 684.

"1. A master is not responsible for the wrongful act of his servant, unless that act be done in execution of the authority, express or implied, given by the master. Beyond the scope of his employment, the servant is as much a stranger to his master as any third person, and the act of the servant not done in the execution of the service for which he was engaged cannot be regarded as the act of the master.

"2. Where the plaintiff after purchasing a ticket as a passenger, applied to the servant of the defendant charged with the duty of checking baggage, to have his baggage checked to his place of destination, and by his importunate conduct and abusive language towards the servant provoked a quarrel, in which the servant, to gratify his personal resentment, struck the plaintiff: Held—That the wrongful act of the servant in striking the plaintiff cannot be regarded as authorized by the master, nor as an act done in the execution of the service for which he was engaged by the master. And the fact that the blow was inflicted with a hatchet furnished by the master, to be used for a wholly different purpose in connection with the servant's business, is immaterial as respects the liability of the master." *Little Miami Rd. Co.* v. *Wetmore,* 19 Ohio St., 110.

Counsel for plaintiff has cited in his brief the case of *Nelson Business College Co.* v. *Lloyd,* 60 Ohio St., 448, 54 N. E., 471, and also the case of *Stranahan Bros. Catering Co.* v. *Coit,* 55 Ohio St., 398, 45 N. E., 634.

There is clearly a distinction as to the facts in those cases. On page 460 in the *Nelson Business College case,* the court said:

"In many cases it is clear from the nature of the

act, that it is not within the scope of the servant's employment. This is so in the *Wetmore case*. There the servant's duty was to check baggage; and when he made a violent assault on the plaintiff because he had provoked him, he turned aside and made an assault, not in the course of his employment, and for which the master was not liable. But when, as in this case, the act done—the pushing of the table—was, in its nature, within his employment, and the question is, whether it was in fact done in the performance of his service to his master, or was done *wholly* for the purpose of injuring the plaintiff and none other, it necessarily becomes, under our system of administering justice, a question to be determined by the trial of the fact."

The question to be determined from the facts in the instant case, which are undisputed, is whether at the time Peg Elliott made the assault she was acting within the scope of her employment and attending to her master's business. If she was not, the court was right in directing a verdict in favor of the defendant.

"2. Whether an employee was within the scope of his employment at a given time becomes a question for the jury only when the facts in issue are in dispute: if there is no question of fact to be passed upon, the matter is one of law and should be determined by the court." *Stewart* v. *Whitford*, 22 C. C. (N. S.), 585, 30 C. D., 652.

"A railroad company is not liable for damages resulting from an assault and battery inflicted by its station agent and another upon a third person, when it appears that the difficulty which gave rise to the beating arose out of a personal quarrel, and that the agent, so far as related to his participation therein, was acting upon his individual responsibility and not within the scope of the business of his agency as an employee of the company." *Lynch* v. *Florida C. & P. Rd. Co.*, 113 Ga., 1105, 39 S. E., 411, 54 L. R. A., 810.

In view of the facts as they are found in the record, and in view of the authorities just cited, it is the opinion of this court that at the time of the assault Peg Elliott was not acting within the scope of her employment or attending to her master's business, and for that reason the first assignment of error is not well taken.

We consider now the second assignment of error, in which it is claimed that the defendant ratified the acts of Peg Elliott in continuing her in his employment. Upon examination of the authorities, we find that such continuation of employment did not amount to a ratification.

"In order to constitute one a wrongdoer by ratification, the original act must have been done, or intended to be done, in his interest; otherwise, the *animus* of the wrongdoer cannot be imputed to him." *Dillingham* v. *Russell,* 73 Tex., 47, 11 S. W., 139, 15 Am. St. Rep., 753, 754.

"It cannot be held as matter of law that the mere retention of a servant who in the course of his employment and while improperly performing an act arising in the line of his duty inflicts a malicious wrong on another operates a ratification of his malicious act and thus fix his evil motive on his employer so as to render him liable in damages." *Dillingham* v. *Russell, supra,* 48.

"In order to constitute one a wrongdoer by ratification, the original act must have been done in his interest, or been intended to further some purpose of his own. Lord Coke, on this subject, says:

'He that agreeth to a trespass after it is done is no trespasser, unless the trespass was done to his use or for his benefit, and then his agreement subsequent amounteth to a commandment.'" 1 Cooley on Torts, 241, Section 76.

In conclusion, it is the opinion of this court that neither of the assignments of error as set forth by

plaintiff is well taken, and that the court below was correct when it directed a verdict in favor of the defendant. For the reasons herein set forth, the judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

PUTNAM, P. J., and MONTGOMERY, J., concur.