**Labadie**
**v.**
**Semler**
*[Cite as 4 AOA 207]*

Case No. L-89-132
Lucas County, (6th)
Decided June 1, 1990

*Lorin J. Zaner, for Appellant.*

*Richard L. Sanders, for Appellees.*

This matter is before the court on appeal from the Lucas County Court of Common Pleas. The facts giving rise to this appeal are as follows:

On December 4, 1987, appellant, Regina M. Labadie, drove to the home of appellee, Patricia Semler. Regina Labadie suspected that her husband, Samuel M. Labadie, was having an affair with Patricia Semler. When Regina Labadie arrived at the Semler home, she saw her husband drive away. Patricia Semler's minor sons, William and John Semler, were standing outside of the Semler home. After exchanging words with Regina Labadie, John Semler, age sixteen, threw a snowball at the passenger side of Regina Labadie's car. William Semler, age seventeen, also threw a snowball at appellant which hit her in the face. Because the snowball contained pieces of gravel and ice, Regina Labadie sustained serious injuries to her nose, eyes and head. Labadie's injuries required surgery and hospitalization.

On June 15, 1988, Regina Labadie filed a complaint against the Semlers alleging that William Semler negligently and/or intentionally injured Regina Labadie. Regina Labadie also alleged that Patricia and Robert Semler were civilly liable for the actions of their son William under R.C. 3109.10. In a March 27, 1989 judgment entry, the court found that Regina Labadie had failed to show that William Semler had intentionally injured Regina Labadie. Rather, the court found William Semler's actions to have been negligent. The court also found that Regina Labadie had failed to use ordinary care to avoid injury to herself. Based on the court's findings, Regina Labadie was awarded $30,000 reduced by fifty percent due to her own contributory negligence. It is from this judgment that Regina

Labadie appeals setting forth the following assignments of error:

"A. The trial court's decision finding that William Semler's actions were not willful and malicious thereby finding no liability against Patricia Semler and Robert Semler, and reducing William Semler's liability by 50%, was against the manifest weight of the evidence.

"B. The trial court should not have granted Defendant Robert Semler's Motion for Direct [*sic*] Verdict.

"C. The trial court erred by overruling Appellant's Objections to Speculative and Irrelevant Evidence."

In her first assignment of error, appellant contends that the court erred in finding appellant to be contributorially negligent since William Semler's actions were willful and malicious. We agree.

## I.

The Restatement of the Law 2d, Torts (1965) 30, Section 18, adopted by the Supreme Court of Ohio, provides the following definition of battery:

"(1) An actor is subject to liability to another for battery if:

"(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

"(b) an offensive contact with the person of the other directly or indirectly results."

Section 20 of the Restatement further provides:

"If an act is done with the intention of inflicting upon another a harmful bodily contact *or of putting the other in apprehension of either a harmful or offensive bodily contact, and if it causes an offensive bodily contact to the other, the actor is subject to liability to the other although the act was not done with the intention of bringing about the resulting offensive contact.*" Restatement of the Law 2d, Torts (1965) 35, Section 20; (emphasis ours).

William Semler testified at trial that on December 4, 1987 Regina Labadie pulled up in front of William's house and began yelling obscenities about his mother, Patricia Semler. At the time of this incident, William Semler was seventeen years old. William testified that he asked Labadie to leave many times but she refused. William further testified that because he wanted Labadie to "shut up and leave", he reached down to the side of the road and made a snowball. He then threw it at Labadie, hitting her in the face.

When questioned at trial about his intent, William stated that he merely wanted to "scare" Labadie by throwing a snowball at her. Interestingly enough, William testified that he threw the snowball from a distance of ten to fifteen feet. Although William specifically testified that he did not intend to injure Labadie, we note that William was an accomplished high school athlete in football and baseball. Thus, it is likely that William had more control over the snowball than the average person. William also admitted that he was aware that Labadie's car window was down, thereby, making it easier for William to injure Labadie. Finally, there is no evidence to suggest that William took any precautions to avoid hitting Labadie in the face.

In sum, it is apparent from William's own testimony that he, at the very least, intended to put Labadie "in apprehension of either a harmful or offensive bodily contact." Restatement of the Law 2d, Torts Section 18; supra. While William may not have envisioned the resulting injuries his action caused, he is nevertheless, liable for his intentional tortious conduct.

## II.

Because we have found that William Semler acted intentionally rather than negligently, we further find that the court erred in apportioning damages between the parties.

It is well-settled that a plaintiff's contributory negligence is no defense to a defendant's willful and malicious acts. *Payne* v. *Vance* (1921), 103 Ohio St. 59, 76. The *Payne* court distinguished willfulness from negligence by stating:

"Negligence is synonymous with heedlessness, carelessness, thoughtlessness, disregard, inattention, inadvertence, remissness and oversight. Willfulness implies design, set purpose, intention, deliberation.

"* * *

"In order that one may be held guilty of willful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result." *Id.* at 68; (citations omitted).

In 1980, the Ohio General Assembly enacted R.C. 2315.19 which substituted comparative negligence for the common law doctrine of contributory negligence. 70 Ohio Jurisprudence 3d

(1986) 140, Negligence, Section 63. The statute reads in pertinent part:

"(A)(1) In negligence actions, the contributory negligence of a person does not bar the person or his legal representative from recovering damages that have directly and proximately resulted from the negligence of one or more other persons, if the contributory negligence of the person bringing the action was no greater than the combined negligence of all other persons from whom recovery is sought. However, any damages recoverable by the person bringing the action shall be diminished by an amount that is proportionately equal to his percentage of negligence, which percentage is determined pursuant to division (B) of this section."

Although the statute is silent on the issue of intentional conduct, the Sixth Circuit Court of Appeals has found the Ohio statute to only apply in negligence actions. *Stearns* v. *Johns-Manville Sales Corp.* (C.A.6, 1985), 770 F.2d 599; *Bailey* v. *V&O Press Co., Inc.* (C.A.6, 1985), 770 F.2d 601; (R.C. 2315.19 does not apply in actions based on strict liability in tort.) More recently, the Sixth Circuit Court of Appeals addressed the applicability of R.C. 2315.19 to intentional torts in *Molton* v. *Cleveland* (C.A.6, 1988), 839 F.2d 240. *Molton* involved the suicide of a pretrial detainee in a Cleveland, Ohio jail. The facts showed that the detainee, Molton, had been severely beaten by the jail personnel before his suicide. The administrator of Molton's estate sued the city for federal deliberate indifference, wrongful death and assault and battery. The jury returned a verdict in favor of Molton's estate. On appeal, the sixth circuit held that the wrongful death award could be reduced by the percentage of comparative negligence on the part of Molton. However, the court specifically held that the jury's award based on the intentional tort claim (assault and battery) could not be reduced under R.C. 2315.19 since the Ohio statute did not apply to claims involving intentional torts. See, also, Brant, A Practitioner's Guide to Comparative Negligence In Ohio (1980), 41 Ohio St. L.J. 585, 595 "since contributory negligence did not preclude a plaintiff's claim for willful, wanton, or reckless misconduct prior to the comparative negligence statute, it should not now serve to lessen the plaintiff's recovery."

In accordance with the foregoing authorities, we find that Ohio's Comparative Negligence Statute, R.C. 2315.19, does not apply to the instant case since William Semler committed an intentional tort. Regina Labadie is therefore entitled to an award of damages obscenities unaffected by her own negligence.

Labadie also contends that the court erred in failing to find Patricia Semler liable for the intentional actions of her son. We agree. R.C. 3109.10 provides in part:

"Any person is entitled to maintain an action to recover compensatory damages in a civil action, in an amount not to exceed two thousand dollars and costs of suit in a court of competent jurisdiction, from the parents who have the custody and control of a child under the age of eighteen, who willfully and maliciously assaults the person by a means or force likely to produce great bodily harm." See, also *Payne* v. *Vance, supra*; (which defined willful or wanton conduct as a "conscious and intentional wrongful act.")

The record in this case shows that Patricia Semler had custody and control of her son, William. Having already determined that William intentionally committed an assault and battery against Regina Labadie, we find that Patricia Semler is liable to Regina Labadie for the intentional act of her son, William Semler. Accordingly, appellant's first assignment of error is found well-taken.

In her second assignment of error, Labadie contends that the court erred in granting a directed verdict to William Semler's father, Robert Semler.

As stated above, R.C. 3109.10 provides that a person who has been intentionally assaulted by a minor child can recover damages from parents who have "custody and control" of that child. In ruling in favor of Robert Semler's motion for directed verdict, the court found that Robert Semler could not be held liable under R.C. 3109.10 since Robert Semler did not have custody or control of William Semler. This finding was based on the following facts:

"(1) Patricia and Robert Semler were divorced;

"(2) Patricia was awarded custody of William in the divorce proceedings;

"(3) Robert Semler had not lived with Patricia and William for approximately four years;

"(4) Robert Semler did not participate in the disciplining of William; and

"(5) Robert Semler was not involved in any major decisions made with regard to William's education."

Appellant contends that Robert Semler was required to submit a legal document to the court showing that he did not have custody of William.

However, the statute sets forth no such requirement. Based upon our review of Robert and Patricia Semler's testimony in this case, we find that there was sufficient evidence upon which the trial court could have ruled that Robert Semler was not liable under R.C. 3109.10. Accordingly, Labadie's second assignment of error is found not well-taken.

Finally, in her third assignment of error, Labadie contends that the court erred in overruling her evidentiary objections.

Labadie's counsel first objected to the direct examination of Patricia Semler's sister, Judy Moon. Moon testified that she and Patricia encountered appellant in a bar approximately three months after the snowball incident. Moon testified that appellant walked into the bar and began yelling obcsenities at Moon and Patricia Semler. At that point in the trial, Labadie's counsel objected on the basis of relevancy. The court overruled the objections of Labadie's counsel.

Labadie's counsel next objection came during the direct examination of Patricia Semler. Patricia testified that someone threw eggs on her car. Patricia further testified that in her opinion, Regina Labadie was responsible for the eggs.

It appears from the record that the Semler's counsel was attempting to demonstrate that Regina Labadie was capable of antagonizing Patricia Semler. This would have helped the Semlers' contention that Regina Labadie verbally provoked William Semler into throwing the snowball. That is, that Regina Labadie was contributorially negligent. In that we have already determined that William Semler committed an intentional tort against Regina Labadie, we note that it is well-settled law that mere words of provocation do not justify an assault and battery. *The Mahoning Valley Railway Co. v. DePascale* (1904), 70 Ohio St. 179, 186. Therefore, the court's rulings on Labadie's objections constituted harmless error, if error existed at all. Accordingly, appellant's third assignment of error is found not well-taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this decision.

*Judgment reversed and
cause remanded.*

HANDWORK, P.J., GLASSER, J., and RESNICK, J., concur.