FULWILER, Appellee and Cross–Appellant,

v.

SCHNEIDER, d.b.a. Caddy's, et al., Appellants and Cross–Appellees.

[Cite as *Fulwiler v. Schneider* (1995), 104 Ohio App.3d 398.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–930953, C–930967.

Decided June 7, 1995.

400

*Gary E. Becker* and *Jeffrey P. Hinebaugh*, for appellee and cross-appellant.

*William C. Knapp* and *William A. DeCenso*, for appellants and cross-appellees.

*Per Curiam.*

On the evening of November 26–27, 1991, plaintiff-appellee and cross-appellant, Jay Fulwiler, and a friend, Mike Menke, went to Caddy's nightclub, arriving at approximately 9:00 p.m. They took a cab because they planned on drinking and they had heard a radio advertisement stating that they could receive a free cab ride home. While both had a few drinks, neither was intoxicated when they left the bar at 2:00 a.m. when it closed.

Once outside Caddy's, appellee and Menke got into a cab waiting at the corner and asked the driver whether the ride would be free. After the driver informed them that it was not, appellee went back into Caddy's to ask an employee to call him another cab. Defendant William Gardner, a "bouncer" at Caddy's who was

not scheduled to work that evening, grabbed appellee by the arm and escorted him out of the bar, telling him that it was closed. However, another employee did call appellee a cab.

A second cab arrived and the driver informed appellee that to qualify for a free cab ride, he needed a slip signed by a Caddy's employee. Upon approaching Caddy's front door, appellee found it to be locked with several employees inside. Appellee knocked on the door and a woman yelled, "Fuck you. Get the hell out of here. We're closed."

Appellee and Gardner exchanged words through the door. Gardner attempted to unlock the door to get to appellee, but another Caddy's employee stopped him. Gardner then went outside through a side door, came up to appellee from behind and smashed appellee's face into the door, causing appellee significant injury.

Immediately after the incident, the police were summoned. A Caddy's employee unlocked the front door and allowed Gardner back inside. However, no one opened the door for the police. An eyewitness, Mark Vollrath, identified Gardner to police as Caddy's employees attempted to smuggle him out a side door into a waiting truck.

Appellee subsequently filed suit against Gardner as well as defendants-appellants and cross-appellees, Charles M. Schneider, d.b.a. Caddy's, and The House, Inc., d.b.a. Caddy's, a defunct corporation of which Schneider was the sole shareholder. In his complaint, appellee alleged that Gardner was acting within the scope of his employment when he committed an intentional tort against appellee and that appellants ratified Gardner's actions. Appellee further alleged that appellants were negligent in failing to protect appellee from Gardner's violent act committed after Caddy's had served Gardner alcohol.

A jury trial commenced on August 17, 1993. The trial court granted appellee's motion for a directed verdict against Gardner on the intentional tort claim. Subsequently, the jury returned a general verdict in favor of appellee, awarding him $25,000 in compensatory damages. In response to interrogatories, the jury stated that (1) Gardner was not acting in the scope of his employment when he assaulted appellee; (2) appellants ratified Gardner's act of striking appellee; (3) appellants did not exercise reasonable care to protect appellee from Gardner's violent act; (4) Gardner was liable for punitive damages; (5) appellants were not liable for punitive damages; (6) appellee was not entitled to recover attorney fees from Gardner; and (7) appellee was entitled to recover attorney fees from appellants.

Consequently, the trial court entered judgment in favor of appellee for $25,000 against Gardner and appellants, jointly and severally. The court also awarded appellee $25,000 in punitive damages against Gardner, $7,500 in attorney fees

against appellants, and court costs over and above the cost bill from the clerk of courts. From that judgment, appellants filed a timely appeal and appellee filed a cross appeal.

Because the issues raised by appellee in his cross-appeal will affect the disposition of some of the issues raised by appellants, we will discuss appellee's three assignments of error first. In his first assignment of error, he states that the trial court erred in failing to grant his motion for a default judgment against The House, Inc. He argues that The House, Inc. failed to answer his first amended complaint within twenty-eight days after the complaint was served on the corporation's sole shareholder. We find this assignment of error is not well taken.

The record shows that appellee filed his first amended complaint on March 27, 1992, and served it by ordinary mail on "Charles Schneider, d/b/a Caddy's" at Caddy's place of business and on Charles Schneider individually at Schneider's residence. Appellee never obtained service on the statutory agent for The House, Inc. because the agent had died.

Pursuant to an agreement by the parties, the trial court granted the defendants until May 26, 1992, to plead. On May 22, 1992, Schneider filed a motion to dismiss alleging that The House, Inc. was the only proper defendant. Appellee filed a motion for default judgment against The House, Inc. on June 16, 1992, claiming that he had perfected service on the corporation by serving Schneider, its sole owner. On June 22, 1992, The House, Inc. filed a motion to dismiss alleging insufficiency of service. It also filed a motion for an extension of time to answer the first amended complaint. The trial court overruled appellee's motion for default judgment and granted The House, Inc.'s motion for an extension of time.

Civ.R. 6(B) provides in pertinent part:

"When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[.]"

The trial court's decision regarding a motion for an extension of time will not be reversed on appeal absent an abuse of discretion. In determining whether neglect was excusable or inexcusable, the court must take into consideration all the surrounding facts and circumstances. It must also remain mindful that cases should be decided on their merits if possible rather than on procedural grounds. *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 271, 533 N.E.2d 325, 331.

██ The House, Inc.'s good-faith belief that it had not been properly served, and that it should be dismissed from the action, was a sufficient basis to allow the trial court to find that there was excusable neglect on its part in failing to timely file an answer. The record does not show that The House, Inc. completely failed to comply with the Rules of Civil Procedure, see *Miller v. Lint* (1980), 62 Ohio St.2d 209, 214, 16 O.O.3d 244, 247, 404 N.E.2d 752, 755, and the trial court's decision granting its motion for an extension of time to answer was not so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. Accordingly, appellee's first assignment of error is overruled.

In his second assignment of error, appellee states that the trial court failed to properly instruct the jury on punitive damages. He argues that the trial court erroneously instructed the jury that it had to find both that Gardner was acting in the scope of his employment *and* that appellants ratified his actions before appellants could be liable for punitive damages. We find this assignment of error to be well taken.

██ R.C. 2315.21(B)(1) provides that punitive damages are recoverable from a defendant if "[t]he actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, *or* ratified actions or omissions of an agent or servant that so demonstrate[.]" (Emphasis added.) Generally, acts committed within the scope of employment will be authorized, either expressly or impliedly, by the employer. *Combs v. Kobacker Stores, Inc.* (App.1953), 65 Ohio Law Abs. 326, 330, 114 N.E.2d 447, 450; *Fisher v. Hering* (1948), 88 Ohio App. 107, 110, 44 O.O. 79, 80, 97 N.E.2d 553, 555. In that situation, the doctrine of *respondeat superior* liability will apply and the plaintiff need not prove ratification to hold the employer liable. The plaintiff need prove ratification only where the employee's actions are outside the scope of employment, see *State ex rel. Riley Constr. Co. v. E. Liverpool City School Dist. Bd. of Edn.* (1967), 10 Ohio St.2d 25, 29, 39 O.O.2d 15, 18, 225 N.E.2d 246, 249; *Bernardo v. Anello* (1988), 61 Ohio App.3d 453, 459, 573 N.E.2d 126, 129; *Fisher, supra*, at 112, 44 O.O. at 81, 97 N.E.2d at 556–557, and if the employer expressly or impliedly ratifies willful and malicious conduct by an employee, an award of punitive damages is proper. *Saberton v. Greenwald* (1946), 146 Ohio St. 414, 32 O.O. 454, 66 N.E.2d 224, paragraph three of the syllabus.

██ Accordingly, we hold that the trial court erred in instructing the jury that it had to find both that Gardner was acting in the scope of his employment and that appellants ratified his actions before it could award punitive damages. That instruction was an incorrect statement of law which misled the jury and prejudiced appellee. See *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8,

10, 482 N.E.2d 583, 585; *Dubecky v. Horvitz Co.* (1990), 64 Ohio App.3d 726, 740, 582 N.E.2d 1087, 1096.

 Appellants argue that appellee did not present sufficient evidence that they ratified Gardner's actions to justify an instruction on punitive damages. We disagree. Even slight acts of ratification will be sufficient to support a claim of punitive damages against an employer. *Saberton, supra,* 146 Ohio St. at 430, 32 O.O. at 460, 66 N.E.2d at 231; *Williams v. Hyatt Legal Serv.* (Mar. 14, 1990), Summit App. No. 14235, 1990 WL 28113, unreported. The continued employment of an individual who committed an intentional tort is not, in and of itself, enough to show ratification by an employer. *Fisher, supra,* 88 Ohio App. at 112, 44 O.O. at 81, 97 N.E.2d at 556. However, in this case appellee's evidence, if believed, showed not only that appellants continued to employ Gardner, but that (1) Caddy's employees allowed Gardner back into the bar through the locked front door after the assault; (2) they attempted to sneak Gardner out of the back door into a truck while wearing a red Caddy's jacket; (3) they would not allow a police officer to enter the building immediately after the incident; (3) neither Gardner nor any other employee was ever suspended or disciplined in any way for the assault; and (4) Gardner continued to work in the same capacity as a bouncer after this incident. Therefore, there was evidence from which reasonable minds could conclude that appellants ratified Gardner's action and an instruction on ratification was justified. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832; *Sapp v. Stoney Ridge Truck Tire* (1993), 86 Ohio App.3d 85, 96, 619 N.E.2d 1172, 1179.

 Appellants further argue that appellee did not properly object to the trial court's charge on punitive damages. Civ.R. 51(A) provides that "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." However, where the record affirmatively shows that the trial court has been fully apprised of the correct law governing an issue, and that the complaining party has unsuccessfully requested the inclusion of the law in the trial court's charge to the jury, that party does not waive the objection to the court's charge by failing to formally object. *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 65 O.O.2d 129, 303 N.E.2d 81, paragraph one of the syllabus.

Appellee filed a written request for a jury instruction on punitive damages which correctly stated that appellants could be found liable for punitive damages if they ratified the act of their employee. Further, the court held a conference off the record to discuss instructions and appellee's counsel stated on the record that he objected to the court's failure to give his requested instruction on punitive damages as the court had stated in conference. Therefore, it appears from the

record that the trial court was fully aware of appellee's objection to the charge, and we cannot hold that appellee waived his objection. *Beavercreek Local Schools v. Basic, Inc.* (1991), 71 Ohio App.3d 669, 692–693, 595 N.E.2d 360, 375. Accordingly, we sustain appellee's second assignment of error, and the matter must be remanded to the trial court for a new hearing on the issue of whether appellants are liable for punitive damages.

In his third assignment of error, appellee states that the trial court erred by refusing to properly instruct the jury regarding scope of employment. However, he also states that he presents this assignment of error solely to preserve his rights if this court determines that any of appellants' assignments of error merit a reversal of the judgment against them. Since this court is not reversing any material part of the underlying judgment on which this assignment of error might have a bearing, we find the assignment to be moot and we decline to address it.

We turn now to the merits of appellants' seven assignments of error. In their first assignment of error, they state that the trial court erred in admitting evidence of other wrongful acts committed by Caddy's employees. The court allowed Vollrath to testify about an incident the same night where another Caddy's bouncer "roughed up" his brother. Appellants argue that this testimony was impermissible character evidence under Evid.R. 404(B), the only purpose of which was to inflame the jury. We find this assignment of error is not well taken.

Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Even if we were to consider the business involved in this case to be a "person," Vollrath's testimony regarding the incident involving his brother was not presented to prove the character of that person. Therefore, Evid.R. 404(B) is inapplicable.

The admission or exclusion of relevant evidence rests within the discretion of the trial court. An appellate court will not disturb a decision of the trial court to admit or exclude evidence absent "a clear and prejudicial abuse of discretion." *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493. As a bouncer, Gardner was employed in a position where intentional, physical acts could be considered to be within the scope of his employment. See *Thomas v. Ohio Dept. of Rehab. & Corr.* (1988), 48 Ohio App.3d 86, 548 N.E.2d 991. Vollrath's testimony was relevant to the issue of whether Gardner was acting within the scope of his employment when he confronted appellee. See Evid.R. 401. The trial court's decision to admit the evidence was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *Blakemore, supra,* 5 Ohio St.3d at 218, 5 OBR at 481, 450 N.E.2d at 1142. Accordingly, appellants' first assignment of error is overruled.

In their second assignment of error, appellants state that the trial court erred in admitting evidence of Caddy's gross receipts. They argue that this evidence was irrelevant and only demonstrated to the jury that appellants had "deep pockets." They further argue that even if the evidence was relevant, its probative value was outweighed by its potential for prejudice and confusion of the issues. We find this assignment of error is not well taken.

Appellee testified that he had heard that the bars on the street where Caddy's is located were offering free cab rides. During direct examination, Caddy's manager, James Moehring, testified that Caddy's could not afford to offer free cab rides since the average patron spent only $20 per evening in the bar. On cross-examination, appellee's counsel used evidence of the bar's annual gross receipts to demonstrate that Moehring's testimony was inaccurate.

Evid.R. 611(B) provides that "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." The scope of cross-examination rests within the discretion of the trial court. *State v. Heim* (Mar. 19, 1986), Hamilton App. No. C–850501, unreported, 1986 WL 3425. Appellants "opened the door" for testimony about Caddy's finances and invited cross-examination on that issue. See *Lester v. Leuck* (1943), 142 Ohio St. 91, 92–93, 26 O.O. 280, 281, 50 N.E.2d 145, 146; *State v. Spencer* (May 15, 1991), Hamilton App. No. C–900008, 1991 WL 81661, unreported. Further, Moehring's testimony on direct examination indicated he was intimately familiar with all aspects of Caddy's operations, including financial matters. By using the statement of gross receipts, appellee attempted to impeach his credibility by showing that he was not as knowledgeable as he claimed. Accordingly, we cannot conclude that the trial court abused its discretion in admitting this evidence.

Appellants also argue that the evidence was not admissible because its probative value was substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury pursuant to Evid.R. 403(A). The trial court held otherwise, a decision that was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *Blakemore, supra,* 5 Ohio St.3d at 218, 5 OBR at 481, 450 N.E.2d at 1142; *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 224, 24 O.O.3d 322, 325, 436 N.E.2d 1008, 1012–1013. Accordingly, appellants' second assignment of error is overruled.

In their third assignment of error, appellants state that the trial court erred in failing to grant their motion for a directed verdict on the issue of ratification. They argue that there was no evidence that anyone in authority at Caddy's ratified Gardner's actions. We find this assignment of error is not well taken.

As we have previously stated, appellee presented sufficient evidence which, when construed most strongly in his favor, would allow reasonable minds

to reach different conclusions as to whether appellants ratified Gardner's actions. Therefore, the trial court did not err in failing to grant their motion for a directed verdict. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 411, 504 N.E.2d 19, 21. Appellants' arguments rely on their version of the evidence, which conflicted with appellee's. The issue is one of credibility, which is for the jury to decide. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Accordingly, appellants' third assignment of error is overruled.

In their fourth assignment of error, appellants state that the trial court erred in refusing to give a jury instruction on the issue of comparative negligence. They argue that evidence that appellee was intoxicated, ignored warnings to stop pounding on Caddy's front door, and dared Gardner to come get him would allow reasonable minds to conclude that appellee failed to exercise reasonable care for his own safety. We find this assignment of error is not well taken.

R.C. 2315.19, Ohio's comparative negligence statute, does not apply to claims involving an intentional tort. *Labadie v. Semler* (1990), 66 Ohio App.3d 540, 545, 585 N.E.2d 862, 864. "[I]n a civil action for tort or wrongful death, a finding by the jury that a plaintiff * * * was comparatively negligent will not defeat or diminish the recovery of damages where the defendant's intentional tort, committed with actual malice, proximately caused the injury." *Schellhouse v. Norfolk & W. Ry. Co.* (1991), 61 Ohio St.3d 520, 525, 575 N.E.2d 453, 457. Appellee claimed both that Gardner committed an intentional tort while acting within the scope of his employment and that appellants ratified his intentional act. Comparative negligence is not a defense to these claims.

Appellee also raised a negligence claim based upon appellants' failure to protect him from Gardner's violent acts. However, the "two issue rule" is applicable in this case:

"Where a general verdict is returned for one of the parties, and the mental processes of the jury are not tested by special interrogatories to indicate which issue was determinative of the verdict, it will be presumed that all issues were resolved in favor of the prevailing party, and, where a single determinative issue has been presented free from error, error in presenting another issue will be disregarded." *Norwood v. Forest Converting Co.* (1984), 16 Ohio App.3d 411, 417, 16 OBR 481, 487, 476 N.E.2d 695, 702, quoting *Centrello v. Basky* (1955), 164 Ohio St. 41, 57 O.O. 77, 128 N.E.2d 80, paragraph four of the syllabus.

Although the jury did answer interrogatories in this case, they do not indicate which issue was determinative of the jury's verdict or the amount of

damages it awarded.[1] While we believe that Gardner's conduct was not a foreseeable result of appellee's actions, and therefore that any negligence of appellee was not a proximate cause of his own injuries, see *Bahm v. Pittsburgh & Lake Erie RR. Co.* (1966), 6 Ohio St.2d 192, 194, 35 O.O.2d 307, 308, 217 N.E.2d 217, 220, we need not reach that issue. Since the claim involving ratification of Gardner's intentional tort was determinative, any error by the trial court in failing to give an instruction on comparative negligence was harmless. Accordingly, appellants' fourth assignment of error is overruled.

In their fifth assignment of error, appellants state that the trial court erred in refusing to grant their motion for a directed verdict on appellee's negligence claim. Again, the two-issue rule applies. Since the intentional-tort claim was determinative, any error by the trial court on the negligence claim is harmless. *Forest Converting, supra.* Accordingly, appellants' fifth assignment of error is overruled.

In their sixth assignment of error, appellants state that the trial court erred in awarding appellee attorney fees. They argue that, without statutory authorization, the plaintiff may only recover attorney fees from a defendant where the jury has awarded punitive damages against that defendant. We find this assignment of error to be well taken.

Generally, absent statutory authority, the prevailing party cannot recover attorney fees as part of the costs of litigation. *Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.* (1976), 46 Ohio St.2d 177, 179, 75 O.O.2d 224, 225, 347 N.E.2d 527, 528–529. One exception is that if punitive damages against a defendant are proper, the aggrieved party may also recover reasonable attorney fees. *Id.* at 181, 75 O.O.2d at 226, 347 N.E.2d at 530; *Columbus Finance, Inc. v. Howard* (1975), 42 Ohio St.2d 178, 183, 71 O.O.2d 174, 176, 327 N.E.2d 654, 658.

In the present case, the jury did not award punitive damages against appellants. Therefore the award of attorney fees was improper and we sustain appellants' sixth assignment of error. However, since there must be a new hearing on punitive damages as a result of our earlier holding that the trial court improperly instructed the jury on the basis for awarding punitive damages against appellants, the issue of attorney fees should also be addressed on remand.

In their seventh assignment of error, appellants state that the trial court erred in awarding as court costs appellee's expenditures over and above the cost bill from the clerk of courts. They argue that these expenses are not fixed by statute

---

1. Appellants did not assign as error the trial court's refusal to use their requested jury interrogatories.

and are therefore not recoverable by the prevailing party as costs. We find this assignment of error to be well taken.

Civ.R. 54(D) provides that prevailing parties should normally be awarded the costs of litigation. *Cincinnati ex rel. Simons v. Cincinnati* (1993), 86 Ohio App.3d 258, 267, 620 N.E.2d 940, 946. The terms "costs" includes only those fees and disbursements allowed by statute. *Centennial Ins. Co. v. Liberty Mut. Ins. Co.* (1982), 69 Ohio St.2d 50, 50–51, 23 O.O.3d 88, 88–89, 430 N.E.2d 925, 926; *Simons, supra,* at 267, 620 N.E.2d at 946. Expert witness fees and the expense of depositions not used at trial shall not be taxed as costs. *Barrett v. Singer Co.* (1979), 60 Ohio St.2d 7, 8, 14 O.O.3d 122, 122, 396 N.E.2d 218, 218; *Miller v. Gustus* (1993), 90 Ohio App.3d 622, 624–625, 630 N.E.2d 68, 70; *Simons, supra,* at 267, 620 N.E.2d at 946.

The improper "costs" of which appellants complain were listed in Exhibit A, which was introduced at a separate hearing on costs and attorney fees. Exhibit A shows that the trial court improperly taxes as costs an expert witness fee charged by Dr. Frank Welsh for appearance at his deposition. The trial court also taxed as costs the expenses of four depositions. Appellee claims that these depositions were used at trial to impeach the testimony of appellants' witnesses. However, the phrase "used at trial" refers to depositions actually read into evidence. *Miller, supra,* 90 Ohio App.3d at 624–625, 630 N.E.2d at 70.

Further, the trial court also taxed as costs the expense of obtaining certain financial documents and medical records, the fee for a copy of appellee's own deposition, and expenses for photocopying and computer research. All of these items are part of the expense of litigation and are not properly taxable as costs under any statute. *In re Election of Nov. 6, 1990* (1991), 62 Ohio St.3d 1, 3–4, 577 N.E.2d 343, 345–346; *Simons, supra,* 90 Ohio App.3d at 267, 620 N.E.2d at 946. Accordingly, we sustain appellants' seventh assignment of error.

For the reasons given in response to the appellee's second assignment of error and the appellants' sixth and seventh assignments of error, the judgment of the trial court is reversed only as it pertains to punitive damages, attorney fees and costs, and this case is remanded for further proceedings in accordance with law on those three matters. In all other respects, the trial court's judgment is affirmed.

*Judgment affirmed.*

GORMAN, P.J., HILDEBRANDT and PAINTER, JJ., concur.