860 F.2d 1079
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GEORGE P. BALLAS BUICK-GMC TRUCK, INC., Plaintiff-Appellee,
v.
Lela Dianne BERNATH, Defendant-Appellant.
 No. 87-3642.
 United States Court of Appeals, Sixth Circuit.
 Oct. 12, 1988.
 
 Before BOYCE F. MARTIN, Jr. and DAVID A. NELSON, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Lela Bernath appeals from an adverse judgment entered on a jury verdict in an action brought against her under federal and state odometer rollback laws. Her principal argument is that she may not be held liable as an agent of her husband. Finding none of her arguments meritorious, we shall affirm the judgment of the district court.
 
 
 2
 * On or about July 25, 1984, Mrs. Bernath bought a 1982 Cadillac Seville from Dave White Chevrolet, Inc. The car's odometer registered 44,149 miles. By December 30, 1985, the odometer registered only 25,001 miles.
 
 
 3
 On December 30 Mrs. Bernath's husband, Ernest, set out to buy a new car for his wife. He planned to trade in her 1982 Cadillac and put the new car in her name. Mr. Bernath went to George P. Ballas Buick-GMC Truck, Inc., negotiated a deal, and signed some paperwork. At trial, a "Federal Odometer Mileage Statement and Ohio Seller's Affidavit," signed by Mr. Bernath as "transferor," was introduced in evidence. The document recites that "the odometer of the vehicle ... now reads 25,001 miles." The following printed statements were marked with a check:
 
 
 4
 "I hereby certify that to the best of my knowledge the odometer reading as stated above reflects the actual mileage of the vehicle described below."
 
 
 5
 "I hereby certify that the odometer of said vehicle was not altered, set back or disconnected while in my possession."
 
 
 6
 Mr. Bernath claimed at trial that he had signed the form in blank.
 
 
 7
 On January 6, 1985, Mrs. Bernath, the registered owner of the Cadillac, went to Ballas Buick to sign some papers. There was conflicting testimony as to whether she was asked to sign an odometer statement and whether she in fact signed such a statement. It is clear, however, that she intended title to be transferred and that she knew of the mileage discrepancy. She claimed that she mentioned the discrepancy to Ballas Buick, but Ballas Buick denied it and the jury resolved the contention against Mrs. Bernath.
 
 
 8
 On February 2, 1986, Ballas Buick sold the Cadillac to another customer. The purchaser had trouble with the car, and was referred by Ballas Buick to Gumpp Cadillac, a local Cadillac dealer. Gumpp's service manager, Harold LaFond, recognized the car and suspected that the odometer reading was inaccurate. According to Gumpp's records, the car had been serviced on December 23, 1985, at which time the odometer read 53,128 miles. Further investigation revealed that the car had also been serviced on January 3, 1986, on which date the odometer reading had been recorded as 25,237 miles.
 
 
 9
 LaFond called the manager of Ballas Buick, James Nimphie. Nimphie then got in touch with Mr. Bernath, and Mr. Bernath apparently claimed that he had told the salesman that the odometer had been replaced. Nimphie then checked back with his salesman, who told an entirely different story. Nimphie called Mr. Bernath back and asked Mr. Bernath to come in and discuss the matter. Mr. Bernath refused. Nimphie then called the new owner of the Cadillac, who returned the car. Ballas Buick solicited three wholesale bids on the car and resold it.
 
 
 10
 Alleging damages of $4,295, Ballas Buick sued Mr. and Mrs. Bernath in United States district court under the Federal Odometer Rollback and Disclosure Act, 15 U.S.C. Secs. 1981 et seq., and parallel Ohio legislation, Ohio Rev.Code Sec. 4549.41 et seq. At the close of plaintiff's case, the court directed a verdict for Mr. Bernath on the theory that he was not the "transferror." The court permitted the case against Mrs. Bernath to go to the jury. The court charged the jury on five claims:
 
 
 11
 (1) disconnecting, resetting, or altering an odometer reading with intent to defraud, in violation of 15 U.S.C. Sec. 1984;
 
 
 12
 (2) failing to provide true odometer disclosure information, in violation of 15 U.S.C. Sec. 1988;
 
 
 13
 (3) conspiring to commit the illegal acts forming the basis for claims (1) and (2), in violation of 15 U.S.C. Sec. 1986;
 
 
 14
 (4) changing, tampering with, disconnecting, or failing to connect an odometer, in violation of Ohio Rev.Code Secs. 4549.42(A) and 4549.45;
 
 
 15
 (5) failing to provide truthful odometer disclosure information, in violation of Ohio Rev.Code Sec. 4549.46.
 
 
 16
 The jury returned a verdict for the plaintiff on all claims except the conspiracy claim, and assessed damages at $3,500. From a judgment entered on the jury's verdict Mrs. Bernath has appealed to this court.
 
 II
 
 17
 Both the state and federal laws involved prohibit certain acts by a "transferor" of an automobile, and the main question raised by Mrs. Bernath is whether she can be held liable under agency principles for actions taken by her husband. If Mr. Bernath committed prohibited acts while acting as Mrs. Bernath's agent, and did not exceed his authority in doing so, we see no reason why Mrs. Bernath may not be held responsible under traditional agency law principles.
 
 
 18
 The district court instructed the jury that:
 
 
 19
 "[A] person may be liable for violations of the provisions of the Federal or the Ohio Odometer Acts by virtue of acts that they personally committed or by virtue of acts committed by their agents.
 
 
 20
 An agency is a contract express or implied by which one party confides to another management of some business to be transacted in his or her name, or on his or her account, by which the other assumes to do the business and render an account for it.
 
 
 21
 To establish an agency, the plaintiff must prove by a preponderance of the evidence that the agency actually existed and that the agent had the authority he assumed to exercise. Where the principal has by his or her voluntary act placed an agent in such a situation that a person of ordinary prudence, conversant with business purposes and the nature of the particular business, is justified in presuming that such agent has a right to perform a particular act and in dealing with the agent the principal is estopped--that is stopped--as against such person of denying the agent's authority.
 
 
 22
 Under the ordinary rules pertaining to the liability of principals for his or her agent [sic], you're instructed that a wife is bound by the fraudulent representations of her husband where she allows him to manage her property and made contracts relative thereto, as if it were his own, and accepts the benefits of his acts.
 
 
 23
 When the husband is acting as his wife's agent in transactions, a wife is bound by her husband's knowledge of the circumstances which makes the transaction fraudulent, although she might be entirely ignorant of the facts. There must be proof that the husband had the authority to act, and mere proof of marital status is not sufficient to establish a husband is an agent for his wife."
 
 
 24
 Taken as a whole, these instructions accurately summarize the applicable principles of agency law. They make clear that a husband is not automatically his wife's agent. See Somers v. Birkhead, 108 Ohio App. 507, 512, 157 N.E.2d 459, 462 (1959). They also make clear that a principal is bound by the fraudulent representations of her agent when she allows him to act on her behalf and accepts the benefits of those acts. Cf. Saberton v. Greenwald, 146 Ohio St. 414, 430, 66 N.E.2d 224, 231 (1946).
 
 
 25
 There was ample evidence in this case to support a finding by the jury that Mr. Bernath was acting as Mrs. Bernath's agent. There was no dispute that Mrs. Bernath allowed her husband to go out and buy a new car for her, and it was understood that he would arrange to trade in her Cadillac as part of the bargain. Mrs. Bernath cites no authority for the proposition that the principles of agency law are inapplicable in actions brought under the odometer statutes; and if agency law does apply, she advances no serious argument why her husband could not properly be found to have acted as her agent.
 
 
 26
 Mrs. Bernath contends that the combined effect of the court's directed verdict for her husband and the jury's finding in her favor on the conspiracy theory is to preclude any finding against her on an agency theory. But the court directed a verdict for Mr. Bernath on the ground that Mr. Bernath was not a "transferor" of the car that was registered in Mrs. Bernath's name. The trial court did not find that Mr. Bernath had done nothing wrong; it merely found that Mr. Bernath himself did not come within the terms of the statutes.
 
 
 27
 The jury's finding that there was no conspiracy avails Mrs. Bernath nothing. The elements of a conspiracy--agreement to do an unlawful act, assent to that agreement before the commission of the unlawful act, and an overt act in furtherance of the conspiracy--are not the same as the elements of agency, and the evidence in this case strongly supports the conclusion that Mrs. Bernath ratified the acts of her agent after the fact.
 
 III
 
 28
 Mrs. Bernath complains that the jury was not instructed that it needed to find she intended to defraud Ballas Buick. But intent to defraud--or "intent to change the number of miles indicated" on the odometer, which is essentially the same thing--was mentioned at least five times in the court's instructions, and was carefully explained to the jury in the following passage:
 
 
 29
 "Well, to act with intent to defraud means to act wilfully and with specific intent to deceive or cheat; ordinarily for the purpose of causing some financial loss to another, or bringing about some financial gain to one's self."
 
 
 30
 Furthermore, it should be noted that Ohio law apparently does not require proof of intent to defraud in any event. The jury's verdict could thus be affirmed on the basis of the pendent state claims even if intent to defraud had not been proved or the jury had not been charged with respect to this element of the federal cause of action. See Flint v. Ohio Bell Telephone Co., 2 Ohio App.3d 136, 137, 440 N.E.2d 1244, 1246 (1982) ("the absence of a mental element ... plainly indicates a legislative purpose to hold transferors ... strictly liable for their conduct").
 
 
 31
 Mrs. Bernath contends further that submitting the conspiracy theory to the jury "constituted the erroneous submission of an issue not properly for the jury" and "only confused the jury." The jury decided this issue in her favor, however, and any error in this respect is immaterial.
 
 
 32
 Mrs. Bernath argues that the instructions on agency law, quoted extensively above, were "so broad" and "general" as to make her "liable for her Husband's actions on the facts of our case practically as a matter of law." She criticizes the court's boilerplate instruction on circumstantial evidence as "unusual," apparently suggesting that the court was improperly encouraging the jury to rely on such evidence. And she claims that the trial judge "should not have injected the state statutes into the case" because "[t]here was no need to accept pendent jurisdiction." The trial court's exercise of its pendent jurisdiction was well within its discretion, however, and we see no reason to suppose that the court's instructions on state law confused the jury.
 
 
 33
 Finally, Mrs. Bernath challenges the award of attorney fees. Both the federal and state odometer statutes contain nearly identical language providing for costs and reasonable attorney fees "in the case of any successful action to enforce" the provisions of those statutes. 15 U.S.C. Sec. 1989(a)(2); Ohio Rev.Code Sec. 4549.49(2). Mrs. Bernath argues that the fee award was excessive and should be reduced because the court directed a verdict in favor of Mr. Bernath. But if Ballas Buick had brought this action against Mrs. Bernath only, rather than against Mr. and Mrs. Bernath, its attorney fees would have been about the same. Ballas would have had to conduct the same pretrial preparation, present the same evidence, and call the same witnesses at trial. The directed verdict for Mr. Bernath has no bearing on the attorney fee question.
 
 
 34
 The award of attorney fees should be reduced only if the trial court abused its discretion in making the award. It is clear that a trial court does not abuse its discretion, in an odometer case, merely by approving a fee award greater than the actual damages recovered. Fleet Investment Co. v. Rogers, 620 F.2d 792, 793-94 (10th Cir.1980); Duvall v. Midwest Auto City, 578 F.2d 721, 726-727 (8th Cir.1978). On the facts of this case, we find no abuse of the district court's discretion.
 
 
 35
 AFFIRMED.