**Joyce LITTLE, Plaintiff,**

v.

**UNUMPROVIDENT CORPORATION, et al., Defendants.**

**No. C–2–01–1269.**

United States District Court, S.D. Ohio, Eastern Division.

May 1, 2002.

Scott S. Blass, Bordas, Bordas & Jividen, Wheeling, WV, for plaintiff.

Brett K. Bacon, Michael J. Holleran, Frantz, Ward, LLP, Cleveland, OH, for defendants.

## OPINION AND ORDER

GRAHAM, District Judge.

This is an action filed by plaintiff Joyce Little against defendants UNUMProvident Corporation and UNUM Life Insurance Company of America. This matter is now before the court on defendants' motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and to strike plaintiff's jury demand.

A complaint may be dismissed for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir.1978). The court is not required to

accept as true unwarranted legal conclusions or factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir.1987).

## I. History of the Case

This action was originally filed in the Court of Common Pleas of Belmont County, Ohio on November 19, 2001. In her complaint, plaintiff alleged that she was a covered insured under a long term disability policy and a group life and accidental death and dismemberment benefit policy issued to the Twin City Hospital Corporation in Dennison, Ohio. Plaintiff further alleged that in the summer of 1994, she developed cardiomyopathy and congestive heart failure which rendered her totally disabled and unable to perform the material duties of her regular occupation or any occupation for which she was reasonably fitted by training, education or experience. It is further alleged that defendants paid total disability benefits from 1994 to 2000. However, by letters dated January 25, 2001, and January 26, 2001, defendants advised plaintiff that her disability benefits would be discontinued, and that as a result, her life insurance coverage would also be terminated. Plaintiff contended that the decision to discontinue her benefits was without reasonable justification, and alleged that defendants misled plaintiff's physician in an effort to place his reports about plaintiff's condition in a false light.

In Count I of her complaint, plaintiff asserted a claim for benefits due under the policies. In Count II, she asserted a claim for intentional infliction of emotional distress resulting from the handling of her claims and the discontinuance of her dis-ability benefits and coverage under the life insurance policies. In Counts III and IV, plaintiff asserted claims for breach of the actual and implied covenants of good faith and fair dealing inherent in insurance contracts due to the termination of her disability benefits and life insurance coverage, misrepresentations allegedly made to plaintiff's physician, and the arbitrary, capricious or malicious refusal to continue her benefits. She also alleged that defendants put their own interests ahead of plaintiff's interests.

On December 20, 2001, defendants filed a notice of removal of the action to this court. The removal was based on the existence of diversity jurisdiction, and on federal question jurisdiction resulting from the alleged complete pre-emption of plaintiff's state law claims by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* In support of the latter ground for removal, defendants asserted that the insurance policies in question were issued to plaintiff's employer, Twin City Hospital Corporation, and were employee benefit plans as defined in ERISA, 29 U.S.C. § 1002(1), and further, that plaintiff was a "participant" of these ERISA plans as defined in 29 U.S.C. § 1002(7).[1]

## II. ERISA Pre-emption

### A. Standards

Defendants argue that plaintiff's state law claims of bad faith, intentional infliction of emotional distress, and fraud are pre-empted by ERISA. Defendants also contend that plaintiff's prayer for punitive damages is pre-empted.

---

**1.** Although plaintiff's complaint is phrased exclusively in terms of state-law claims and makes no express reference to ERISA, plaintiff has not contested defendants' contention that the insurance plans in question are employee benefit plans governed by ERISA. She agrees that her complaint "states a claim for plan benefits and for breach of fiduciary duty under ERISA's civil enforcement provisions codified in Title 29, § 1132, Unite States Code." Plaintiff's Memorandum Contra, p. 31.

ERISA is a comprehensive act designed to regulate employee welfare and pension benefits plans. *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 650–51, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). ERISA was enacted to replace a patchwork scheme of state regulation of employee benefit plans with a uniform set of federal regulations. *See FMC Corp. v. Holliday*, 498 U.S. 52, 56–60, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

▉ Pursuant to 29 U.S.C. § 1144(a), ERISA pre-empts all state laws that "relate to" employee benefit plans, whether or not the state laws are designed to affect employee benefit plans. *Id.* at 58, 111 S.Ct. 403. The label placed on the state law claim does not determine whether it is pre-empted; rather, pre-emption occurs where the essence of the claim is for the recovery of an ERISA plan benefit. *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991).

▉ In discussing this pre-emption provision, the Supreme Court has noted its extreme breadth, terming it "clearly expansive," "broad [in] scope," "broadly worded," "deliberately expansive," and "conspicuous for its breadth." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)(internal citations omitted). The Supreme Court has found that in enacting § 1144(a), it was Congress' intent:

to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives

among States or between States and the Federal Government ..., [and to prevent] the potential for conflict in substantive law, ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

*Travelers*, 514 U.S. at 656–57, 115 S.Ct. 1671 (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). However, the pre-emption provision is not without limits. Pre-emption does not occur if the state law has only a tenuous, remote, or peripheral connection with covered plans, such as many laws of general applicability. *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992).

▉ A plan "relates to" an ERISA plan for purposes of § 1144(a) if it has (1) a connection with, or (2) a reference to, such plan. *Dillingham*, 519 U.S. at 324, 117 S.Ct. 832.[2] In discussing whether a state law has a "connection with" an ERISA plan, the Supreme Court has indicated that ERISA's "relates to" language was not intended to modify "the starting presumption that Congress does not intend to supplant state law." *Travelers*, 514 U.S. at 654, 115 S.Ct. 1671. *See also De Buono v. NYSA–ILA Medical and Clinical Services Fund*, 520 U.S. 806, 813, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997). In analyzing whether there is connection to an ERISA plan, a court must look "to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," *Travelers*, 514 U.S. at 656, 115 S.Ct. 1671, as well as to the nature of the effect of the state law on

---

**2.** A state law "refers to" an ERISA plan if the law acts immediately and exclusively upon ERISA plans, or expressly mentions ERISA plans and singles them out for different treatment, or if the existence of ERISA plans is essential to the law's operation. *Kentucky*

*Ass'n of Health Plans, Inc. v. Nichols*, 227 F.3d 352, 358–59 (6th Cir.2000). The court sees no basis for finding that any state law in this case "refers to" an ERISA plan within the meaning of this branch of the test.

ERISA plans. *Dillingham*, 519 U.S. at 325, 117 S.Ct. 832. The Supreme Court has also stated that the purpose of § 1144(a) was "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans," and noted that, under past decisions, ERISA pre-empts state laws that mandate employee benefit structures or their administration. *Id.* at 657–58, 115 S.Ct. 1671.

By way of example, the Supreme Court held in *Travelers* that a statute which required hospitals to exact surcharges from patients whose hospital bills were paid by non-Blue Cross/Blue Shield providers was not pre-empted because the indirect economic influence of the surcharge did not bind plan administrators to any particular choice so as to regulate the ERISA plan itself, nor did it preclude uniform administrative practice or furnishing a uniform interstate benefit package. *Travelers*, 514 U.S. at 659–60, 115 S.Ct. 1671. In *Dillingham*, the Court found that California's prevailing wage statute, which required contractors to pay journeyman wages to apprentices not hired from an approved apprenticeship program, was not preempted because it did not require ERISA plans to do anything, but merely provided economic incentive to comport with the state's requirements by using apprentices from approved programs. *Dillingham*, 519 U.S. at 332, 334, 117 S.Ct. 832. In *De Buono*, the Court held that ERISA did not pre-empt a state tax on hospitals, even though the law had some impact on the cost of providing benefits to covered employees. *De Buono*, 520 U.S. at 816, 117 S.Ct. 1747.

In contrast, pre-emption has been found where state laws mandated employee benefit structures or their administration, or where state laws provided alternative enforcement mechanisms which related to ERISA plans. *See Travelers*, 514 U.S. at

657–58, 115 S.Ct. 1671 (discussing cases). The Supreme Court recently applied the *Travelers* analysis in *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). The Court held that a state statute which provided for automatic revocation, upon divorce, of any designation of spouse as beneficiary of a nonprobate asset was pre-empted because it bound ERISA plan administrators to a particular choice of rules for determining beneficiary status, and governed the payment of benefits, a central matter of plan administration. *Id.* at 147–48, 121 S.Ct. 1322. The Court noted that the state statute also had a prohibited connection with ERISA plans "because it interferes with nationally uniform plan administration." *Id.* at 148, 121 S.Ct. 1322 (noting that a principal goal of ERISA was to enable employers to establish a uniform administrative scheme providing for a set of standard procedures to guide processing of claims and disbursement of benefits). The Court also stated that the statute conflicted "with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents." *Id.* at 150, 121 S.Ct. 1322. The Sixth Circuit, applying the *Travelers* analysis, has also held that state laws which affected plan administration and the benefits available under the plan by regulating available providers were "connected with" ERISA plans. *See Kentucky Ass'n of Health Plans, Inc. v. Nichols*, 227 F.3d 352, 363 (6th Cir.2000).

■ The Supreme Court has stated that ERISA's "carefully integrated civil enforcement provisions" are a part of an "interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'" *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)(quoting *Nach-*

man Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)). A plaintiff may not attach new state-law labels to what are essentially ERISA claims for breach of fiduciary duty and recovery of benefits in an effort to obtain remedies that Congress has chosen not to make available under ERISA. *Smith v. Provident Bank,* 170 F.3d 609, 615 (6th Cir.1999).

### B. Bad Faith Claim

#### 1. Relation to Plan

■■■ Defendants argue that plaintiff's Ohio law bad faith claim is pre-empted. Under Ohio law, an insurer has a duty to act in good faith in the handling and payment of the claims of its insured, and a breach of this duty will give rise to a cause of action in tort against the insurer. *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983). "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552, 644 N.E.2d 397, syllabus paragraph one (1994). Mere refusal to pay an insurance claim is not conclusive of an insurer's bad faith. *Helmick v. Republic–Franklin Ins. Co.,* 39 Ohio St.3d 71, 529 N.E.2d 464 (1988); *Hoskins,* 6 Ohio St.3d at 277, 452 N.E.2d 1315. The test "is not whether the defendant's conclusion to deny benefits was correct, but whether the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial." *Thomas v. Allstate Ins. Co.,* 974 F.2d 706, 711 (6th Cir.1992); *Hoskins,* 6 Ohio St.3d at 277, 452 N.E.2d 1315.

Proof of the tort of bad faith stemming from a denial of insurance benefits necessarily requires an examination of the ERISA plan terms and any actions taken by defendants pursuant to the plans. Thus,

in *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 942 (6th Cir.1995), the Sixth Circuit held that claims asserting the Ohio tort of insurance bad faith arising from the failure to pay benefits under an ERISA plan "relate to" the benefit plan.

■■■ In this case, plaintiff's bad faith claim goes to the heart of plan administration and to the exclusive ERISA remedial scheme. In this respect, it differs from the state laws before the Supreme Court in *Travelers, Dillingham* and *De Buono,* and more closely resembles the provision before the Court in *Egelhoff,* where the statute was found to interfere with ERISA's control over plan administration and remedies. Plaintiff challenges the manner in which the defendants made the decision to deny plan benefits allegedly due under an ERISA plan. In doing so, plaintiff seeks to apply state standards to defendants' decision to terminate benefits rather than the plan terms and uniform federal law which Congress intended should govern such decisions. Plaintiff also seeks state law remedies, including punitive and extracontractual damages, which are not available under ERISA's integrated scheme, contrary to congressional intent. Plaintiff's bad faith claim is the sort of claim which Congress never intended to survive ERISA pre-emption, and it is "connected with" and "relates to" an ERISA plan.

#### 2. Insurance Saving Clause

■■■ Plaintiff argues that even if her bad faith claim is "related to" an ERISA plan, it is excepted from pre-emption by the provisions of 29 U.S.C. § 1144(b)(2)(A). This saving clause states that, "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities." 29 U.S.C.

§ 1144(b)(2)(A). Plaintiff argues that the tort of bad faith processing or denial of an insurance claim under Ohio law is a law which regulates insurance, and that her bad faith claim is not pre-empted.

■ The test for determining whether a law "regulates insurance" was first announced in *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), and was most recently discussed by the Supreme Court in *UNUM Life Insurance of America v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). The first step of the inquiry is whether, from a common sense view, the contested law regulates insurance. The second branch of the analysis involves a three-factor test used to determine whether the state practice or regulation fits within the "business of insurance" as that phrase is used in the McCarran Ferguson Act, including: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. *Ward,* 526 U.S. at 367–68, 119 S.Ct. 1380. These last three factors are considerations to be weighed in determining whether a state law regulates insurance, and none of these factors is necessarily determinative in itself. *Id.* at 373, 119 S.Ct. 1380.

In *Ward,* the Supreme Court found that a California notice-prejudice rule which required an insurer to prove prejudice before enforcing proof-of-claim requirements was a law regulating insurance. The court first concluded that the California law, as a matter of common sense, regulated insurance, noting that the rule was distinctly applied to insurance contracts, rather than being a general principle in all contract cases, and that the law was grounded in policy concerns specific to the insurance

industry. *Id.* at 371–72, 119 S.Ct. 1380. The Court did not decide whether the law had the effect of shifting risk, but concluded that the notice-prejudice rule was integral to the relationship between the insurer and the insured, and that the rule was aimed at the insurance industry, rather than merely having an impact on it. *Id.* at 374–75, 119 S.Ct. 1380.

In *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court addressed an issue similar to the case before this court, namely, whether the insurance saving clause operated to preserve an insurance bad faith claim under Mississippi law from ERISA pre-emption. The Court first noted that, from a common-sense standpoint, a law which "regulates" insurance must not just have an impact on the insurance industry, but must be specifically directed toward that industry. *Id.* at 50, 107 S.Ct. 1549. The Court noted that the Mississippi law of bad faith was rooted in general principles of tort and contact law, and that the doctrine was applicable in contexts outside the insurance industry. *Id.*

The Supreme Court in *Pilot Life* then addressed the McCarran Ferguson Act factors. The Court concluded that the common law of bad faith did not effect a spreading of policyholder risk. *Id.* The Supreme Court noted that the law of bad faith concerned the policy relationship between the insurer and the insured, but that the connection to that relationship was attenuated at best because it did not define the terms of the relationship, but rather only provided for punitive damages in the event of a breach of contract. *Id.,* at 50–51, 107 S.Ct. 1549. As to the third factor, the Court found that, although the law of bad faith was associated with the insurance industry, it was developed from general principles of tort and contract law and

was applicable in any breach of contract case. *Id.* at 51, 107 S.Ct. 1549.

The Supreme Court also considered the role of the saving clause in ERISA as a whole. *Id.* at 51, 107 S.Ct. 1549. The Court noted that the state cause of action sought remedies for the improper processing of a claim for benefits under an ERISA-regulated plan which conflicted with Congress's intent that the civil enforcement provisions of ERISA be the exclusive vehicle for actions by plan participants, and that varying state causes of action for claims within the scope of § 1132(a) would pose an obstacle to the purposes and objectives of Congress. *Id.* at 52, 107 S.Ct. 1549. The Court further stated:

> In sum, the detailed provisions of [§ 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Id.* at 54, 107 S.Ct. 1549. The Court concluded, in light of the common-sense understanding of the saving clause, the McCarran–Ferguson Act factors defining the business of insurance, "and, most importantly, the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive," that plaintiff's state law claim of insurance bad faith was not saved from pre-emption under § 1144(b)(2)(A).

The Sixth Circuit applied the McCarran–Ferguson factors in *Davies v. Centennial Life Ins. Co.,* 128 F.3d 934 (6th Cir.

1997) to an Ohio statute which permitted rescission of an insurance policy on the ground of misrepresentation in the insurance application only upon proof of willful fraud, and concluded that the statute did not regulate insurance within the meaning of § 1144(b)(2)(A). The court noted that the risk-spreading principle concerns the risk of injury that the insurer has contractually agreed to bear for the insured. *Id.* at 941 (citing *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 130–31, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)). The court concluded that although the Ohio statute before it placed the legal risks associated with innocent misrepresentations in insurance applications on the insurer, it did not spread policyholder risk because it did not alter the risks for which the insurer and insured originally contracted, those being specific accident and medical costs. *Davies,* 128 F.3d at 942.

The Sixth Circuit in *Davies* also found that the statute did not regulate an integral part of the relationship between the insurer and the insured because it did not define the terms of the relationship between those parties or affect the substantive terms of the contract for accident or health insurance, but simply stated that, regardless of the substantive terms, certain material misrepresentations in the application would justify rescission of the insurance contract. *Id.* at 942. *See also Smith v. Provident Bank,* 170 F.3d at 615 ("In essence, the test for application of the saving clause is whether the law substantively regulates a relationship or merely provides alternative remedies for harms for which ERISA already provides redress."); *International Resources v. New York Life Ins. Co.,* 950 F.2d 294, 300 (6th Cir.1991)(to be "integral," state law must affect specific terms of the insurance policy). As to the third factor, the Sixth Circuit concluded that even if the statute was specifically directed at the insurance

industry, it was merely a codification of general principles of contract law and fraudulent inducement, and therefore this factor weighed against finding that the law regulated insurance. *Davies,* 128 F.3d at 942.

The Sixth Circuit applied the *Pilot Life* principles to the Ohio bad faith tort in *Schachner v. Blue Cross and Blue Shield of Ohio,* 77 F.3d 889 (6th Cir.1996). The court concluded that the Ohio bad faith claim was pre-empted and was not exempted from pre-emption by the saving clause. The court noted that "the differences between the Ohio law in this case and the Mississippi law in *Pilot Life* are differences of degree only. As far as ERISA pre-emption is concerned, there is no difference at all." *Schachner,* 77 F.3d at 898. The Sixth Circuit rejected plaintiff's argument that the law of bad faith in Ohio was directed specifically toward the insurance industry. The court noted that while tort actions were generally unavailable in breach of contract cases, an exception was recognized by Ohio courts in contract situations where a special or fiduciary relationship exists between the parties and imposes a duty of good faith. *Id.* at 897 (citing *Empire–Detroit Steel Div. Cyclops Corp. v. Pennsylvania Elec. Coil, Inc.,* No. CA–2903, 1992 WL 173313 (Ohio App. June 29, 1992)). The court went on to state that the tort of insurance bad faith:

> does not exist independent of traditional, generally-applicable common law; rather, it exists simply because of the Ohio courts' determination that the relationship between insurer and insured gives rise to a fiduciary duty, and that a breach of that duty is tortious.

*Schachner,* 77 F.3d at 897–98. *See also Tolton,* 48 F.3d at 942–43 (Ohio insurance bad faith claim not saved from pre-emption under *Pilot Life* ).

The Sixth Circuit precedent in *Schachner* and *Tolton* applying *Pilot Life* to the Ohio tort of insurance bad faith is controlling in the instant case. This court also agrees with the analysis of the Sixth Circuit in those cases. From a common-sense view, the Ohio tort is not specifically directed toward the insurance industry, but merely has an impact on it because it authorizes additional remedies in the form of extracontractual and punitive damages in the event of certain conduct on the part of the insured in refusing to pay benefits. The Ohio law of bad faith does not transfer or spread a health or life insurance risk which the defendants agreed to bear in the policies at issue, but rather provides additional remedies for mishandling the claim. The law is not an integral part of the policy relationship between the insurer and the insured because it does nothing to alter the substantive terms of coverage. Finally, the Ohio law of bad faith is not exclusive to the insurance industry, but is rooted in general common-law principles.

Plaintiff contests the Sixth Circuit's finding in *Schachner* that the Ohio law of bad faith is not exclusive to insurance contracts. However, there is ample support for this conclusion. In *Hoskins,* the Ohio Supreme Court discussed the basis for liability of an insured in bad faith cases, noting that such liability does not arise from the mere omission to perform a contract obligation, but rather "from the breach of the positive legal duty imposed by law due to the relationships of the parties." 6 Ohio St.3d at 276, 452 N.E.2d 1315. In support of this proposition, the court cited *Saberton v. Greenwald,* 146 Ohio St. 414, 66 N.E.2d 224 (1946), a non-insurance case where punitive damages were upheld in connection with the fraudulent sale of a reconditioned watch as a new watch.

Several Ohio courts have noted that compensatory and punitive damages may be recoverable for a bad faith breach of

contract where a special or fiduciary relationship exists between the parties which imposes a duty of good faith. *See Dietz–Britton v. Smythe, Cramer Co.*, 139 Ohio App.3d 337, 350, 743 N.E.2d 960 (2000)("[T]he tort of bad faith arises as a consequence of a breach of a duty established by a particular contractual relationship."); *Wakeman Oil Co., Inc. v. Citizens National Bank of Norwalk*, No. H–95–045, 1996 WL 520060 (Ohio App. September 13, 1996); *Damascus Steel International Co. v. Massillon Dev. Foundation, Inc.*, No.1995CA00029, 1996 WL 74093 (Ohio App. February 5, 1996). In addition to the special relationship found in the case of insurance contracts, Ohio law also recognizes a duty of good faith in commercial contracts under the Uniform Commercial Code, *see Sammarco v. Anthem Insurance Companies, Inc.*, 131 Ohio App.3d 544, 554, 723 N.E.2d 128 (1998) and in contracts involving dealings between real estate brokers, *see Stan Gertz & Assoc., Inc. v. Donald K. Gant Realty*, No. 14805, 1991 WL 108525 (Ohio App. June 12, 1991). Thus, Ohio courts have defined the tort of bad faith in broad enough terms to permit its extension to other forms of special relationships beyond that of insurer and insured.

Plaintiff also argues that *Ward* broadened the concept of what constitutes a law regulating insurance and altered the standards applicable under the saving clause analysis, and that *Pilot Life* is no longer valid or controlling. However, the Court in *Ward* applied the same test used in *Pilot Life* and did not overrule that case, but rather distinguished it, noting that *Pilot Life* "concerned Mississippi common law not specifically directed to the insurance industry and therefore not saved from ERISA preemption." *Ward*, 526 U.S. at 376 n. 7, 119 S.Ct. 1380. Further, "the *Ward* opinion did not discuss the congressional intent that ERISA's enforcement provisions be exclusive because the

state law rule involved in that case did not implicate the exclusivity of ERISA's enforcement scheme." *Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292, 1300 (11th Cir.2001). Thus, in *Gilbert* and in *Walker v. Southern Co. Services, Inc.*, 279 F.3d 1289 (11th Cir.2002), the Eleventh Circuit concluded that the Supreme Court's decision in *Ward* did not overrule previous authorities holding that the Alabama tort of bad faith was not a law regulating insurance so as to be saved from pre-emption. This court concludes that the *Ward* decision did not affect the validity of *Pilot Life*, nor did it undermine previous Sixth Circuit precedents holding that the Ohio tort of bad faith was not a law regulating insurance and was pre-empted.

Plaintiff's claim of bad faith under Ohio law is pre-empted by ERISA, and is not a law regulating insurance within the meaning of § 1144(b)(2)(A). Defendants' motion to dismiss this claim is well taken.

## C. Intentional Infliction of Emotional Distress Claim

 Defendants move to dismiss plaintiff's claim for intentional infliction of emotional distress on the basis that it is pre-empted by ERISA. Ohio recognizes a cause of action in tort where the defendant engages in extreme and outrageous conduct with the intent to cause emotional distress, and where the defendant's conduct is the proximate cause of plaintiff's suffering serious mental anguish. *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 462 N.E.2d 392 (1984). The Sixth Circuit has held that a claim of intentional infliction of emotional distress which arises out of the refusal to pay benefits under an ERISA plan is one which relates to the plan and is pre-empted. *See Tassinare v. American National Insurance Co.*, 32 F.3d 220 (6th Cir.1994).

Here, plaintiff's claim of intentional infliction of emotional distress is based on the manner in which her continued benefits under the plan were denied. Thus, this claim seeks to challenge how the plan in this case was administered, a matter which Congress intended to leave exclusively to ERISA and federal law. Plaintiff also seeks through this state claim to recover extracontractual damages which would not be available under ERISA. Thus, plaintiff's claim of intentional infliction of emotional distress would have the effect of substituting rules of state law for ERISA and plan provisions governing the defendants' administration of the plan, and would authorize damages available under state law for those available under ERISA, thereby creating a conflict with ERISA's enforcement scheme. Congress's intent that ERISA provide the exclusive scheme for the administration of ERISA plans and the remedies available to plan participants supports the conclusion that Congress did not intend for this type of state claim to survive. Therefore, this claim is pre-empted under ERISA.

*D. Fraud or Misrepresentation Claim*

■ Defendants argue that plaintiff's claim for fraud or misrepresentation is pre-empted by ERISA. Not all misrepresentation claims are pre-empted by ERISA, but rather only those claims which are in essence a claim for recovery of an ERISA plan benefit. *Lion's Volunteer Blind Ind. v. Auto. Group Admin.*, 195 F.3d 803 (6th Cir.1999)(finding pre-emption where misrepresentation claim was brought to obtain benefits denied by the plan)(citing *Cromwell*, 944 F.2d at 1276); *Kentucky Laborers Dist. Council Health & Welfare Fund v. Hope*, 861 F.2d 1003, 1005 (6th Cir.1988)(fraud claim to recover benefits wrongfully distributed by plan pre-empted).

■ In this case, plaintiff alleges that defendants made misrepresentations to her treating physician, thereby inducing him to make erroneous statements based on these alleged misrepresentations, and that the defendants then used these statements in support of the decision terminating her benefits. Plaintiff's fraud or misrepresentation claim is intertwined with the defendants' denial of plan benefits, and "relates to" the ERISA plans. Through this claim, plaintiff in essence seeks to recover benefits which were allegedly due her under the terms of the plan by contesting the validity of the evidence relied on by the defendants in terminating her benefits. Permitting plaintiff to pursue this misrepresentation claim would result judging the defendants' decision under state law rules rather than ERISA principles and any plan provisions governing the payment of benefits. Plaintiff also seeks to recover extracontractual and punitive damages which would not be available under ERISA, contrary to congressional intent. Applying state law in this manner would be incompatible with ERISA's exclusive enforcement scheme. The state-law misrepresentation claim in this case is inextricably related to plaintiff's claim for payment of benefits, and it is pre-empted. Defendants' motion to dismiss this claim is granted.

*E. Punitive Damages*

■ Defendants also argue that plaintiff's prayer for punitive damages must be dismissed because her state law claims are pre-empted and punitive damages are not available under ERISA. It is well established that extracontractual compensatory and punitive damages are not available under ERISA. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)(extracontractual damages not available in action for breach of fiduciary duty under 29 U.S.C.

§ 1132(a)(3)); *Russell*, 473 U.S. at 148, 105 S.Ct. 3085 (no extracontractual damages caused by improper or untimely processing of benefit claims available under ERISA); *Allinder v. Inter–City Products Corp. (USA)*, 152 F.3d 544 (6th Cir.1998)(no compensatory or punitive damages under § 1132(a)(3)); *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689 (6th Cir.1989)(no claims for extracontractual compensatory or punitive damages under ERISA); *Varhola v. Doe*, 820 F.2d 809 (6th Cir.1987)(punitive damages are based on state law and are pre-empted by ERISA). Permitting such a claim would be incompatible with Congress's intent that the damages provided by ERISA's enforcement scheme be exclusive. Therefore, plaintiff's prayer for punitive damages is pre-empted and must be dismissed.

### F. Claims for Failure to Pay Benefits and Breach of Fiduciary Duty

■■■ In their motion to dismiss, defendants do not specifically address the plaintiff's claims for failure to pay benefits and breach of fiduciary duty. Insofar as plaintiff seeks to assert such claims as separate claims under state law, they are pre-empted under ERISA. *See Smith*, 170 F.3d at 613 (state law claims for recovery of benefits and breach of fiduciary duty pre-empted; "ERISA is at least as concerned with defining and standardizing the duties of a fiduciary as it is with providing for recovery of benefits."); *Tolton*, 48 F.3d at 942 (state law claim for improper refusal to authorize benefits pre-empted by ERISA).

However, a civil action for recovery of benefits due under the plan may be pursued under ERISA as authorized in 29 U.S.C. § 1132(a)(1)(B), and an action for breach of fiduciary duty may be pursued under 29 U.S.C. § 1132(a)(2). Although plaintiff's complaint does not specifically refer to ERISA, the factual allegations in her complaint are sufficient to assert claims under ERISA for recovery of bene-

fits denied under the policies and for breach of fiduciary duty. The court will regard these claims as being asserted under ERISA, and they survive defendants' motion to dismiss.

### III. Defendants as ERISA Parties

■■■ Defendants argue that the claims against them should be dismissed because the only proper parties in this action to recover benefits are the plans themselves. There is apparently a split in authority concerning whether a party other than the ERISA plan itself is the only proper party defendant in a claim brought pursuant to § 1132(a)(1)(B). *See Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1194 (8th Cir.1998)(citing cases). However, in the Sixth Circuit, the proper party defendant in an ERISA action concerning benefits is the party that is shown to control administration of the plan. *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.1988). Here, plaintiff has alleged in her complaint that the defendants made the decision to terminate her benefits under the plans. Plaintiff has alleged sufficient facts to identify defendants as administrators and fiduciaries of the plans, and this branch of defendants' motion to dismiss is denied.

### IV. Motion to Strike Jury Demand

■■■ Defendants have also moved to strike plaintiff's jury demand on the ground that plaintiff has no right to a jury trial under ERISA. Defendants are correct in that regard. *See, e.g., Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir.1998)(no right to a jury for denial of benefits claim); *Sprague v. General Motors Corp.*, 133 F.3d 388, 406 (6th Cir.1998)(no right to jury trial on ERISA claims, including claims for breach of fiduciary duty); *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 882–83 (6th Cir.1997)(no right to jury trial in action to

recover plan benefits or to enforce or clarify rights under plan). This court has found that all of plaintiff's state law claims have been pre-empted by ERISA, and plaintiff has no right to a jury trial on her ERISA claims. Defendants' motion to strike plaintiff's jury demand is granted.

## V. Conclusion

In accordance with the foregoing, defendants' motion to dismiss is granted in part and denied in part. Plaintiff's state law claims and her claim for punitive damages are dismissed. Insofar as plaintiff's complaint asserts claims for recovery of benefits and breach of fiduciary duty under ERISA, the motion to dismiss is denied. The motion to strike the plaintiff's jury demand is granted.

It is so ordered.