OPINION
{¶ 1} Defendants-appellants Planet Ford, Inc., and Raj Grandhi appeal from a judgment, following a jury trial, rendered against them and in favor of plaintiffs-appellees *Page 2 
Sarah and Ali Anousheh. Planet Ford and Grandhi raise numerous arguments regarding the judgment. Specifically, they contend that the trial court committed error with regard to jury instructions. They further contend that the trial court erred by failing to render judgment in their favor on the issue of punitive damages. Planet Ford and Grandhi also claim that the trial court abused its discretion with regard to the admission of expert testimony. Finally, they contend that the trial court demonstrated bias toward them to the extent that they were prejudiced in the eyes of the jurors.
 {¶ 2} We conclude that the trial court did err, in part, with regard to the jury instructions. Specifically, the trial court erred by including the term "criminal offense" with regard to a violation of the Consumer Sales Practices Act. The inclusion of this term was unnecessary, irrelevant and prejudicial. Thus, we conclude that this error warrants a reversal of the judgment and a new trial. We find all other claims of Planet Ford and Grandhi lack merit or are rendered moot for the reasons set forth below.
 {¶ 3} Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 4} In January, 2001, Ali Anousheh went to Planet Ford, a member of the Martin Management Group, in order to look for a vehicle to purchase. While on the lot, he observed a 1998 Toyota Sienna van located on the used car portion of the dealership lot. According to Anousheh, the van had a Planet Ford "Quality Pre Owned" sticker on its window, and when he inquired about the van he was informed that it had been owned by Rajkumar Grandhi, who was then Planet Ford's General Manager. Over *Page 3 
the course of several visits to the dealership, Anousheh took a test drive of the van, and also took it to a local garage to have it inspected. Thereafter, Anousheh purchased the van. All of the sales documents referred to Planet Ford as the seller of the van. During the transaction, Ali Anousheh signed a document labeled at trial as Plaintiffs Exhibit 25, which is an order form for the van signed by Anousheh and a representative of Planet Ford. On the form, there is a handwritten statement, initialed by Anousheh, which states as follows:
 {¶ 5} "Customer is aware this vehicle had front end damage repaired (deer problem)."
 {¶ 6} In reality, the van had been involved in three accidents during the time Grandhi owned it. The first accident, involving a deer, resulted in eleven thousand dollars of repairs. The second, which occurred while Grandhi's wife was operating the van, caused the deployment of the air bags and resulted in another ten thousand dollars of damage to the van. The third accident involved "minor bumper stuff costing a "few hundred dollars" to repair.
 {¶ 7} The Anoushehs drove the van for approximately ten months before becoming involved in an accident. After taking the van to Voss Toyota for repair, the Anoushehs were informed that the van had prior damage, unrelated to their accident, needing to be repaired.
 {¶ 8} Eventually, the Anoushehs filed suit against Planet Ford, Grandhi, and Grandhi's wife, Susan, alleging breach of contract, fraud and violations of the Ohio *Page 4 
Consumer Sales Practices Act (CSPA) and the Motor Vehicle Sales Rule.[1] The matter proceeded to a jury trial, following which the jury returned a verdict in favor of the Anoushehs.
 {¶ 9} In all of the general verdict forms, the jury unanimously found against Planet Ford and Grandhi, and in favor of the Anoushehs, on the issues of fraud, breach of contract, and violations of the CSPA and the MVSR. Then in interrogatory number one, the jury found that the actual damages to be awarded to the Anoushehs was $5,455.09. In interrogatories number two and three, the jury assessed zero dollars of the actual damages against Planet Ford, while assessing the entire sum against Grandhi. In the fourth and fifth interrogatories, the jury assessed the sum of $200,000 in punitive damages against Planet Ford, and $30,000 in punitive damages against Grandhi.
 {¶ 10} Upon the reading of the verdict, Planet Ford asked for a mistrial or in the alternative for the trial court to enter a judgment of zero against it on both the actual and punitive damages awards. The trial court declined either of these options, but returned the cause to the jurors for further deliberations. Thereafter, the jury returned a verdict assessing one-half of the assessed actual damages against each defendant.
 {¶ 11} From the judgment against them, Planet Ford and Grandhi appeal.
 II {¶ 12} Planet Ford's First Assignment of Error is as follows:
 {¶ 13} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT *Page 5 
PROVIDED JURY INSTRUCTIONS THAT ADVOCATED FOR THE PLAINTIFFS AND WHICH CONFUSED THE JURY."
 {¶ 14} Planet Ford contends that the trial court abused its discretion with regard to the jury instructions. Specifically, Planet Ford contends that the trial court abused its discretion by giving an instruction that the "sale of the motor vehicle not owned by a dealership is a criminal act," and by failing to give an instruction regarding Planet Ford's defense of bona fide error. Planet Ford further contends that the trial court committed prejudicial error by giving improper instructions regarding punitive damages. Finally, Planet Ford contends that the trial court erred by giving separate instructions for the Consumer Sales Practices Act (CSPA) and the Motor Vehicle Sales Rule (MVSR).
 {¶ 15} A trial court should ordinarily give a requested jury instruction if it is a correct statement of the law as applied to the facts of the case, and if there was evidence presented at trial from which reasonable minds could reach the conclusion sought by the instruction. Murphy v. Carrollton Manufacturing Company (1991),61 Ohio St.3d 585. When considering whether to use a jury instruction, it is within the sound discretion of the trial court to refuse to admit proposed jury instructions that are either redundant or immaterial to the case. Youssef v. Parr, Inc. (1990), 69 Ohio App.3d 679. Accordingly, a reviewing court will not reverse unless an instruction is so prejudicial that it may induce an erroneous verdict. Id. An appellate court's duty is to review the instructions as a whole, and, "[i]f, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled."Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 410. *Page 6 
 {¶ 16} We begin with the claim that the trial court abused its discretion with regard to its decision to include the following jury instruction:
 {¶ 17} "A licensed car dealer in Ohio is prohibited from displaying or displaying for sale or selling a motor vehicle without having obtained a certificate of title or an assignment of a certificate of title for it.
 {¶ 18} "If a licensed car dealer in Ohio displays or displays for sale or sells a motor vehicle without having obtained a certificate of title or an assignment of a certificate of title for the vehicle prior to the sale, then that is a criminal act.
 {¶ 19} "If a licensed car dealer does this in the course of, and in relation to, a consumer transaction, then that is an unfair act."
 {¶ 20} Planet Ford argues that it was unnecessary to instruct the jury that the failure to obtain title prior to selling the vehicle was a criminal act. It argues that the trial court could and should have limited the instruction to indicate that the failure to have the title prior to selling the vehicle was prohibited and that it could constitute a violation of the CSPA, without the necessity of framing it as a criminal offense. Planet Ford argues that the "only purpose for [giving] the instruction was to inflame the passions of the jury."
 {¶ 21} Preliminarily, we note that it appears the above instruction was culled from a reading and combination of the statutory provisions of R.C. 4505.18(A)(2) and 4505.181(E). R.C. 4505.18(A)(2) prohibits a car dealership from displaying for sale or selling a motor vehicle without having obtained a certificate of title. Violations of this statute can result in criminal penalties. R.C. 4505.18(C). R.C. 4505.181(B) provides that when such a sale is made, the purchaser has the right to rescind the transaction and obtain a full refund if: (1) the dealer fails to obtain a certificate of title for the *Page 7 
purchaser within forty days; (2) the title indicates that the vehicle is a rebuilt salvage vehicle and such fact was not disclosed; or (3) the title indicates that the odometer disclosure was inaccurate. Additionally, failure to comply with these provisions "constitutes a deceptive act or practice" and is a violation of the CSPA. R.C.3505.181(E). Persons injured by such violations may also seek remuneration from the "Title defect recision fund," as provided for in R.C. 1345.52.
 {¶ 22} While Planet Ford did, technically, violate R.C. 4505.18(B), it also remedied the problem by immediately providing title to the Anoushehs, as permitted by R.C. 4505.181(B)(1). Thus, the Anoushehs suffered no actual damages from this violation. Therefore, they were limited to a statutory recovery of two hundred dollars for this violation. R.C. 1345.09(B). It appears that the jury did not award any damages for the violation of this statute.
 {¶ 23} What concerns us is the trial court's decision to include in this civil action a reference to the fact that violation of the statute is a criminal offense. Whether the Planet Ford's or Grandhi's actions were criminal is not material to the claims in this civil action. Clearly, as admitted by the Anoushehs during oral argument, the instruction could have been crafted in such a way as to omit this reference to the criminality of the alleged violations, while preserving the intent of the instruction. Furthermore, we can find no valid purpose for including this information. We also agree that using the term "criminal offense" serves to inflame the jury. Since this case also involved the issue of punitive damages with regard to the count of fraud, and given that the jury assessed a large amount of punitive damages, particularly against Planet Ford, we conclude that it is reasonably possible that the jury relied upon the fact that this rather trivial violation of *Page 8 
the Consumer Sales Practices Act — offering a vehicle for sale before actually acquiring title to the vehicle — is a criminal offense in reaching its verdict. Therefore, we conclude that this was prejudicial error warranting a new trial.
 {¶ 24} We next turn to Planet Ford's claim that the trial court abused its discretion by failing to include an instruction on bona fide error pursuant to R.C. 1345.1. That statute provides in pertinent part as follows: "if a supplier shows by a preponderance of the evidence that a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed against the supplier * * *, no party shall be awarded attorney's fees, and monetary recovery shall not exceed the amount of actual damages resulting from the violation."
 {¶ 25} Planet Ford argues it had presented evidence that it had a policy regarding the sale of employee vehicles that Grandhi knew about, but did not follow. Planet Ford argues that this policy was designed to aid the company in its "attempts to comply with the rules and laws governing its business," and that it was therefore entitled to have the trial court give the following jury charge:
 {¶ 26} "If you find that Planet Ford committed a violation by engaging in unfair and deceptive acts or practices, or by committing an unconscionable act, you must determine if Planet Ford maintained procedures reasonably adopted to avoid the violation, and if the violation resulted from a bona fide error. A bona fide error is one made in good faith, despite procedures to avoid the error. Planet Ford must show by a preponderance of the evidence that the violation resulted from a bona fide error."
 {¶ 27} A review of the record reveals that Planet Ford introduced an exhibit *Page 9 
setting forth the following:
 {¶ 28} "Sale of Employee Vehicles
 {¶ 29} "At some point in time, you may desire the Company's assistance in selling your used vehicle. In that event, and before the Company will undertake to sell your vehicle, you must agree upon the net sales proceeds which will be accepted in the event the vehicle is sold, and must further agree that any and all sale proceeds in excess of that amount will be retained by the Company as a sales commission. After the vehicle is placed on the lot for sale, you will not be allowed to use the vehicle. All sales will be invoiced through the Company."
 {¶ 30} One witness, Bruce Browning, testified that he had been a "Vice President of Dealership Operations" for the Martin Management Group. Browning testified that he was familiar with the above-cited policy. He further testified that the purpose of the policy was two-fold: to protect the company with regard to the amount of the sale price, and to give the dealership control of the vehicle.
 {¶ 31} Another witness, Russell Fredette, testified that he had previously been employed by Planet Ford as a "Controller" in charge of "financial records and statements for the dealership." Mr. Fredette testified that not only did the dealership have the above policy, but that the policy went even went further by requiring that the dealership purchase the vehicle from the employee and obtain title to the vehicle in question prior to selling it. However, Fredette also admitted that the policy was never followed.
 {¶ 32} The policy cited by Planet Ford has no relationship to the damages allegedly suffered by the Anoushehs. On its face, the policy appears designed to avoid *Page 10 
the possibility that the dealership might wind up selling a vehicle to which it did not have title, and to which it could not get title. There is no evidence that the policy was designed to prevent the sale of a vehicle with an undisclosed defect. Furthermore, there was evidence that even if the policy were so designed, it was not followed. Therefore, we cannot say that the trial court erred by declining to give the jury a bona fide error instruction.
 {¶ 33} We next address Planet Ford's argument that the trial court presented "unclear" and confusing instructions on punitive damages, which it claims is evidenced by the jury's decision to award punitive damages, despite failing to award any compensatory damages, against it.
 {¶ 34} Planet Ford fails to state with specificity any objection to the trial court's instructions on punitive damages. However, a review of the transcript reveals that Planet Ford raised the following objections. Planet Ford first claimed that the instructions should have contained a provision stating that the "plaintiff must establish, not only the element of fraud, but that the fraud was aggravated by the existence of malice or the wrongdoing and [sic] particularly gross or egregious." From our review of the instructions, we note that this exact language was incorporated into the charge to the jury.
 {¶ 35} Planet Ford also argued that the instructions should have contained a statement that "the only way that Planet Ford can be determined to have punitive damages against them is if Raj Grandhi is found to have punitive damages against him and that Planet Ford then ratified Mr. Grandhi's acts." In actuality, the charge to the jury indicated that punitive damages could not be assessed against Planet Ford unless *Page 11 
Grandhi "committed a malicious act" that "was done in the scope of employment wholly or in part for the benefit of the employer and not solely for the employee's own benefit." The instruction went on to state that Planet Ford had to authorize, participate in, or ratify the act before such damages could be assessed against it.
 {¶ 36} We have reviewed the instructions in their entirety and note that they conform to the model instructions set forth in 1 Ohio Jury Instructions 23.71. Furthermore, we note that the instructions actually given by the trial court are more complete and correct than are the instructions initially proposed by Planet Ford.
 {¶ 37} Planet Ford argues that the interrogatories were defective because they should have asked first, whether the jury found Grandhi liable for punitive damages; second, whether Planet Ford ratified the act of Grandhi; and third, if Planet Ford did so ratify, whether the jury found Planet Ford liable for punitive damages. We note that the interrogatories merely asked the jurors first, "what is the amount of punitive damages, if any, which you find, that Planet Ford should pay," and second "what is the amount of punitive damages, if any, which you find that Raj Grandhi should pay." Given that the jury instructions were clear with regard to the elements and nature of punitive damages, we cannot say that the interrogatories were erroneous simply because they were given in a different order.
 {¶ 38} Finally, Planet Ford contends that the trial court erred by providing "separate instructions on the Consumer Sales Practices Act and the Motor Vehicle Sales Rule, although the Motor Vehicle Sales Rule is a part of the Consumer Sales Practices Act." Planet Ford argues that the MVSR is a part of the CSPA and that to give both charges led the jury to believe that the "plaintiffs were potentially entitled to multiple *Page 12 
recoveries, leading the jury to be more likely to award higher damages." We find no merit to this argument, given that the jury instructions proposed by Planet Ford did the same, exact thing of which they now complain.
 {¶ 39} Planet Ford's first Assignment of Error is sustained in part, and overruled in part.
 III {¶ 40} Planet Ford's Second Assignment of Error states:
 {¶ 41} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO GRANT PLANET FORD'S MOTION FOR DIRECTED VERDICT ON THE ISSUE OF PUNITIVE DAMAGES."
 {¶ 42} Planet Ford contends that the trial court erred by denying its motion for a directed verdict on the Anousheh claim for punitive damages. In support, it argues that there was no evidence that Planet Ford "authorized, participated in, or ratified Grandhi's actions or omissions."
 {¶ 43} We begin by noting that an appellate court's review of the grant or denial of a motion for directed verdict is de novo. Gliner v.Saint-Gobain Norton Indus. Ceramics Corp., 89 Ohio St.3d 414, 415. In conducting this review, the appellate court must construe the evidence most strongly for the nonmoving party, and where there is substantial evidence upon which reasonable minds could reach different conclusions on the essential elements of the claim, the motion must be denied.Enderle v. Zettler, 12th Dist. No. CA2005-11-484, 2006-Ohio-4326,]} 7.
 {¶ 44} R.C. 2315.21, which governs the award of punitive damages in tort *Page 13 
actions, provides in pertinent part that punitive damages may not be recovered from a defendant unless the evidence shows that "the actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate." R.C. 2315.21(C)(1). The burden of proof necessary to recover punitive damages is clear and convincing evidence. R.C. 2315.21(C)(3).
 {¶ 45} Generally, acts committed within the scope of employment will be authorized, either expressly or impliedly, by the employer."Fulwiler v. Schneider (1995), 104 Ohio App. 3d 398, 406. "In that situation, the doctrine of respondeat superior liability will apply and the plaintiff need not prove ratification to hold the employer liable." Id. A plaintiff must show ratification only where the employee's actions are outside the scope of employment. Id. For an act to fall within the scope of employment, it must be "calculated to facilitate or promote the business for which the [employee] was employed." Osborne v. Lyles
(1992), 63 Ohio St. 3d 326, 329. "The willful or malicious character of an employee's act does not always remove the act from the scope of employment as a matter of law, unless the act is so divergent that its very character severs the employment relationship." 39 Ohio Jurisprudence3d, Employment Relations, § 404. When the facts are in dispute, the question of whether an employee was acting in the scope of his employment is one of fact for the jury to determine. Fisher v.Hering (1948), 88 Ohio App. 107, 111.
 {¶ 46} While Planet Ford claims that the subject sale was solely limited to a transaction by and between Grandhi and the Anoushehs and that it did not authorize this sale, there is evidence upon which the jury could find otherwise. The record *Page 14 
contains evidence that Grandhi was, arguably, acting within the scope of his employment when he sold the vehicle to the Anoushehs. It is clear that Planet Ford permitted the sale of employee vehicles to Planet Ford customers, and that Planet Ford earned money from such sales.
 {¶ 47} Further, the record demonstrates that at the time Anousheh first observed the vehicle, it was on the used car portion of the Planet Ford lot. The vehicle had a Planet Ford sticker on it specifically stating, "This Vehicle Has Been Reconditioned to Ford Standards." A Planet Ford salesman showed the vehicle to Anousheh and even took him on a test drive. The salesman was in the office with Anousheh and Grandhi when the sales terms were finalized. Anousheh was then taken to another person who handled the sales paperwork. Finally, the sales paperwork and the certificate indicated that Planet Ford was the seller of the vehicle. In short, a reasonable juror could find that Planet Ford took an active hand in the sale of this vehicle and that the sale was part of an ongoing practice.
 {¶ 48} From this evidence, we conclude that a reasonable juror could find that Grandhi was acting in the scope of employment when he sold the vehicle to the Anoushehs. The jury could also find that the act of selling the car, without disclosing that it had been involved in more than one accident, was calculated to facilitate the business of Planet Ford. Despite the issue of whether the failure to disclose was willful or malicious, the jury could find that this act did not sever the employment relationship. Therefore, we conclude that the trial court did not err by denying Planet Ford's motion for a directed verdict on the issue of punitive damages. Accordingly, the Second Assignment of Error is overruled. *Page 15 
 IV {¶ 49} For its Third Assignment of Error, Planet Ford asserts:
 {¶ 50} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT ENTER JUDGMENT CONSISTENT WITH THE JURY'S ORIGINAL VERDICT."
 {¶ 51} As noted above, the jury originally failed to assess any of the actual damages against Planet Ford. Despite this fact, the jury still awarded punitive damages against Planet Ford. Upon seeing the verdict, Planet Ford sought a mistrial. The trial court declined to declare a mistrial, instead choosing to send the jury back for further deliberation. Thereafter, the jury maintained the punitive damage award and also assessed a portion of the actual damages against Planet Ford. Planet Ford contends that the trial court erred by permitting the jury to reconsider the verdict and by failing to enter judgment of zero against it consistent with the jury's original finding. Conversely, the Anoushehs argue that the trial court appropriately exercised its discretion by sending the jury back for more deliberations as permitted by Civ.R. 49(B). Planet Ford argues that Civ.R. 49(B) is inapplicable to the instant action because there was no discrepancy between the general verdicts and the interrogatories.
 {¶ 52} Civ.R. 49(B) provides in pertinent part, as follows:
 {¶ 53} "The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. * * * When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general *Page 16 
verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."
 {¶ 54} As noted, Planet Ford contends that the interrogatories are not inconsistent with the general verdicts, but rather that the interrogatories are inconsistent with each other. Thus, Planet Ford insists that the matter could not be returned to the jury pursuant to Civ.R. 49. We disagree. It is clear from the general verdict form that the jury found Planet Ford liable for fraud. Furthermore, as evidenced by the fact that the jury assessed punitive damages against it, it can be assumed that the jury intended to punish Planet Ford for that fraud. The fact that the jury failed to assess any actual damages against Planet Ford, despite finding it liable for fraud in the general verdict, renders that general verdict inconsistent with the interrogatory on actual damages.
 {¶ 55} We cannot say that the trial court abused its discretion in returning this cause to the jury for further deliberation, after instructing it concerning the requirement, as a condition of an award of punitive damages against a party, that there be an award of compensatory damages against that party. Therefore, the Third Assignment of Error is overruled.
 V {¶ 56} Planet Ford's Fourth Assignment of Error is as follows:
 {¶ 57} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT GRANT PLANET FORD'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT NOR ORDER A NEW TRIAL BASED ON THE EXCESSIVE DAMAGES." *Page 17 
 {¶ 58} Planet Ford contends that the jury's punitive damages award was excessive and that it was not supported by the evidence. Thus, Planet Ford claims that the trial court was obligated to grant its motion for a judgment notwithstanding the verdict or to order a new trial. While we agree that the punitive damage award assessed against Planet Ford does seem excessive and unrelated to the actual damages award, we note that this issue has been rendered moot by our disposition of the First Assignment of Error. Therefore, the Fourth Assignment of Error is overruled.
 VI {¶ 59} Planet Ford's Fifth Assignment of Error is as follows:
 {¶ 60} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING IMPROPER EXPERT TESTIMONY."
 {¶ 61} Planet Ford contends that the trial court erred with regard to the admission of the testimony of the experts presented by the Anoushehs. Specifically, it argues that the trial court improperly conducted an examination of the experts' qualifications in the presence of the jury; permitted the three experts to present cumulative testimony that was outside their areas of expertise; allowed improper testimony about the van's airbags and airbag sensor; and permitted the experts to introduce hearsay evidence.
 {¶ 62} We begin first with the claim that the trial court erred by conducting a review of the qualification of the Anoushehs' experts in the presence of the jury. Planet Ford cites no statute or case law in support of this argument. We note that when these witnesses were called to the stand, counsel for the Anoushehs proceeded to question each one regarding their qualifications. Immediately thereafter, and before counsel proceeded to the substantive testimony, counsel for Planet Ford requested an *Page 18 
opportunity to cross-examine on the issue of qualifications. The trial court granted the requests. Following the expert qualification cross-examination, counsel for the Anoushehs resumed direct examination of the experts. At no time did Planet Ford object to inquiring about the qualifications of the experts in the presence of the jury. Thus, we find that Planet Ford has failed to preserve this issue for appeal. Even had it properly raised the issue, we would find no error as qualification of experts is routinely done in the presence of the jury.
 {¶ 63} We next address Planet Ford's claim that none of the Anoushehs' experts were "civil or mechanical engineers or had training in metallurgy," and "none of the three was qualified in the area in which he rendered opinion." Planet Ford argues that the experts could testify "as to their experience and training as to how to perform repairs, but not as to the safety or propriety of the repairs previously performed on this vehicle."
 {¶ 64} The admissibility of expert testimony is governed by Rule 702 of the Ohio Rules of Evidence, which provides in pertinent part as follows:
 {¶ 65} "A witness may testify as an expert if all of the following apply:
 {¶ 66} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 67} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 68} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *" *Page 19 
 {¶ 69} Trial courts utilize Evidence. R. 702 to determine whether expert testimony is sufficiently relevant and reliable. Valentine v.Conrad, 110 Ohio St.3d 42. A trial court has the discretion to determine the admissibility of expert testimony, and an appellate court will not disturb such decisions in the absence of an abuse of that discretion.Iglodi v. Tolentino, Cuyahoga App. No. 88264, 2007-Ohio-1982, ]}12. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 70} The case involves Evidence. R. 702(B) and the issue of whether Betzler, Brocker and Willett were qualified to testify. From our review of the transcript, we cannot say that the Anoushehs' experts were unqualified or that they testified outside of their areas of expertise. For example, Robert Brocker testified that he currently works for a car dealership and that his job entails preparing estimates regarding damaged vehicles and ensuring that those vehicles are properly repaired. He testified that, in the past, he was employed by a company which required him to prepare such estimates for numerous insurance companies. He further testified that he had worked as a technician and supervisor in different automobile body shops and car dealership service departments, and that he, thus, had twenty years of "hands-on" and supervisory duty experience regarding car repairs.
 {¶ 71} William Betzler testified that he was trained at the Chrysler Institute from 1972 through 1980 in mechanical courses. He also had training in technical courses at the Chrysler Corporation Training Center in Cincinnati. He testified that he was trained in body and frame design and repair.
 {¶ 72} Finally, Gene Willett testified that he is an auto body shop manager for an *Page 20 
automobile dealership group. Willett testified that he had been in the "auto body business" for forty years, and that he had "hands-on" experience in unibody and "old-style" automobile frames. He further testified that he had experience in inspecting and repairing Toyotas.
 {¶ 73} We find no support for Planet Ford's assertion that the failure of these witnesses to be trained as metallurgists or mechanical engineers prevented them from being qualified to provide testimony regarding the van. We cannot say that the trial court abused its discretion by permitting these witnesses to testify as experts with regard to the damages and repairs made to the subject vehicle
 {¶ 74} Next, contrary to Planet Ford's assertions, we conclude that while there was some repetition in the testimony presented by the experts, nothing was so cumulative as to constitute prejudicial error.
 {¶ 75} Planet Ford also complains that the experts were allowed to present testimony regarding the van's airbags and airbag sensors. Planet Ford contends that this testimony was irrelevant. However, we note that the trial court specifically ruled that because the Anoushehs were not injured, any testimony about the airbags and sensor was irrelevant except to show a lack of repair from the prior accidents. We cannot say that this ruling was erroneous or an abuse of discretion.
 {¶ 76} Finally, Planet Ford's claim that the experts improperly testified to hearsay evidence with regard to a document labeled as a CARFAX information sheet and a document labeled as a page from a "manual of a different Toyota vehicle."
 {¶ 77} With regard to the CARFAX document, the Anoushehs argue that the report was properly admitted during trial as an exception to the hearsay rule under *Page 21 
Evid.R. 803((17). Indeed, at least one appellate court in Ohio has stated that CARFAX reports have been recognized as a "report widely used by automobile dealers." Stringer v. Boardman Nissan, Mahoning App. No. 05 MA 86, 2006-Ohio-672, ]}24. Further, as noted by the Anoushehs, one of Planet Ford's witnesses testified that the dealerships in the Martin Group "had subscribed to CARFAX." The witness further testified that many car dealers subscribe to the CARFAX service and that they access the data available thereon. Thus, we conclude that the trial court did not abuse its discretion by admitting this exhibit. Even if the admission was erroneous, we would find that Planet Ford has failed to demonstrate prejudice as the only negative item contained on the report is a reference to one of the prior accidents involving the van.
 {¶ 78} Turning to the claim that the page from a Toyota manual constituted hearsay and was improperly admitted we again note that Planet Ford has failed to state how the admission of this document resulted in prejudice. Thus, we conclude that this issue lacks merit.
 {¶ 79} The Fifth Assignment of Error is overruled.
 VII {¶ 80} Planet Ford's Sixth and Seventh assignments of error provide as follows:
 {¶ 81} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN ITS BIAS LED TO A STRING OF IRREGULAR RULINGS THAT PREJUDICED PLANET FORD.
 {¶ 82} "A NEW TRIAL IS WARRANTED WHEN THE ORIGINAL TRIAL *Page 22 
CONTAINS MULTIPLE IRREGULARITIES."
 {¶ 83} Planet Ford contends that the trial judge exhibited bias toward it and that all of the above-cited errors resulted in an unfair trial. These arguments have been rendered moot by our disposition of the first assignment of error. Accordingly, the sixth and seventh assignments of error are overruled.
 VIII {¶ 84} Grandhi's First Assignment of Error is as follows:
 {¶ 85} "THIS APPELLANT SPECIFICALLY ADOPTS, THE SAME AS IF REWRITTEN HEREIN, THE FIRST ASSIGNMENT OF ERROR AND ISSUE PRESENTED FOR REVIEW AND ARGUMENT PREVIOUSLY FILED HEREIN BY CO-APPELLANT, PLANET FORD."
 {¶ 86} Grandhi contends that the jury instructions utilized by the trial court were improper and prejudicial, and that he is thus entitled to a new trial. In support, he adopts the argument set forth by Planet Ford on this issue.
 {¶ 87} We adopt our disposition of Planet Ford's first assignment of error as set forth in Part II above wherein we found that the use of the term "criminal offense" in the jury instructions warrants the reversal of the verdict and judgment. We further adopt that disposition as it overruled all other claims made with regard to the jury instructions. Thus, Grandhi's First Assignment of Error is sustained in part, and overruled in part.
 IX {¶ 88} Grandhi's Second Assignment of Error is as follows: *Page 23 
 {¶ 89} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO DISMISS ALL CLAIMS RELATING TO THIS APPELLANT, GRANDHI FOR PUNITIVE DAMAGES OR GRANT HIS MOTION FOR DIRECTED VERDICT ADDRESSING [sic]."
 {¶ 90} Grandhi contends that the trial court erred by failing to direct a verdict in his favor on the issue of punitive damages. In support, he argues that there is no evidence to support the claim that he failed to disclose the prior damage to the van. He argues that, as shown by Plaintiffs Exhibit 25, Anousheh specifically acknowledged that the van had prior damage. He further argues that because he disclosed the damage, there can be no claim for fraud or deceit, and that any claim for punitive damages must therefore fail.
 {¶ 91} We disagree. While Grandhi did testify that he fully disclosed all prior accidents in which the van had been involved, we note that the record contains evidence upon which a reasonable juror could rely in determining that Grandhi failed to disclose that the van had been involved in three accidents prior to the sale to the Anoushehs. Specifically, Ali Anousheh testified that he was only informed of one accident in which the van collided with a deer while owned by Grandhi. He denied being informed of any other accidents. Although Grandhi explained this by testifying that he told Anousheh about the deer accident and that he also told him about an accident involving his "dear" wife, we conclude that the jury could appropriately choose to discredit this testimony.
 {¶ 92} We conclude that there is evidence in this record upon which the jury could have found fraud; namely the failure to disclose all prior accidents involving the van. Since the "dear wife" accident involved approximately ten thousand dollars in damages *Page 24 
to the vehicle, we conclude that a jury could also find that this fraud was egregious. See, Turner v. Bob Ross Buick, Inc. (Nov. 22, 1993), Montgomery App. No. 13809.
 {¶ 93} Grandhi's Second Assignment of Error is overruled.
 X {¶ 94} Grandhi's Third Assignment of Error states as follows:
 {¶ 95} "THE JURY'S AWARD OF PUNITIVE DAMAGES AGAINST THIS APPELLANT WAS EXCESSIVE AND NOT IN ACCORDANCE WITH THE FACTS PRESENTED BY APPELLANT OR ACCORDING TO LAW."
 {¶ 96} Grandhi contends that even if there is a basis for an award of punitive damages against him, the amount awarded by the jury was clearly excessive. Thus, he contends that the judgment regarding punitive damages must be reversed.
 {¶ 97} We note that the award of punitive damages against Grandhi does not, at first blush, strike us as excessive. Nor can we say that the jury lost its way, or that its decision was the result of passion. However, this argument is rendered moot by our disposition of Grandhi's First Assignment of Error. Thus, the Third Assignment of Error is overruled.
 XI {¶ 98} Grandhi's Fourth Assignment of Error provides:
 {¶ 99} "THE FIFTH ASSIGNMENT OF ERROR AND THE FIRST, SECOND AND THIRD ISSUES PRESENTED FOR REVIEW AND ARGUMENT BY CO-APPELLANT ARE APPLICABLE FOR THIS APPELLANT, GRANDHI AND ARE SPECIFICALLY *Page 25 
ADOPTED AND REINCORPORATED HEREIN, THE SAME AS IF REWRITTEN HEREIN."
 {¶ 100} In this assignment of error, Grandhi contends that the trial court erred with regard to the admission of expert testimony. In support, Grandhi adopts the arguments advanced by Planet Ford.
 {¶ 101} For the reasons set forth in Part VI above, this assignment of error is overruled.
 XII {¶ 102} Grandhi's Fifth and Sixth assignments of error are as follows:
 {¶ 103} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN, THROUGH A SERIES OF REGULAR RULINGS, IT DEMONSTRATED A BIAS TO APPELLEES.
 {¶ 104} "PLANET FORD'S SEVENTH ASSIGNMENT OF ERROR AND ALL ISSUES PRESENTED THEREIN ARE HEREBY ADOPTED ON BEHALF OF THIS APPELLANT, GRANDHI AND INCORPORATED HEREIN THE SAME AS IF FULLY REWRITTEN HEREIN."
 {¶ 105} In these assignments of error, Grandhi again adopts the arguments of Planet Ford with regard to the claims of trial court bias and cumulative error. Again, given that the verdict and judgment in this case are being reversed, these arguments are rendered moot. Grandhi's Fifth and Sixth assignments of error are overruled as moot. *Page 26 
 XIII {¶ 106} Grandhi's Seventh Assignment of Error states:
 {¶ 107} "THE JURY VERDICT WAS INCONSISTENT AND CONTRARY TO LAW."
 {¶ 108} Grandhi argues that the jury verdict was inconsistent. In support, he claims that since the jury awarded punitive damages against him, it must have determined that he sold the vehicle as the agent of Planet Ford. However, he contends that he did not act as Planet Ford's agent in selling the car. He further argues that if the jury found he sold the car as an individual, it could not award punitive damages, since the sale constituted only one incident. He does not cite any statute or case law in support.
 {¶ 109} There is evidence in this record to support a finding that Grandhi sold the vehicle for personal gain and that he sold it while acting as an agent for Planet Ford. The fact that this case involves only one incident, does not remove it from an action for fraud with attendant punitive damages. Therefore, we find this argument lacks merit. Accordingly, Grandhi's Seventh Assignment of Error is overruled.
 XI {¶ 110} The first assignments of error raised by Planet Ford and by Grandhi having been sustained in part, and overruled in part, the judgment of the trial court is Reversed and this cause is Remanded for further proceedings.
BROGAN and DONOVAN, JJ., concur.
[1] Susan Grandhi was dismissed from the suit prior to trial. *Page 1